**INCLINATIONS**

It is Judge Mollway's practice, whenever possible, to notify attorneys and *pro se* parties scheduled to argue motions before her of her inclinations on the motions and the reasons for the inclinations. This is part of Judge Mollway's normal practice, rather than a procedure unique to a particular case, and is designed to help the advocates prepare for oral argument. It is the judge's hope that the advance notice of her inclination and the accompanying reasons will focus the oral argument and permit the advocates to use the hearing to show the judge why she is mistaken or why she is correct. The judge is not bound by the inclination and sometimes departs from the inclination in light of oral argument.

Judge Mollway attempts to communicate her inclinations no later than one working day before a hearing. The court's preference is to distribute the inclinations to the parties via the court's electronic filing system ("CM/ECF"). Accordingly, parties are encouraged to participate in the court's CM/ECF system.

The inclination is intended to be only a summary of the court's thinking before the hearing and not a complete legal discussion. The court will issue a written order with a detailed analysis after the hearing.

The parties are reminded that, under Local Rule 7.4, they may not submit supplemental briefs (such as briefs addressing the inclination) unless authorized by the court. Supplemental declarations, affidavits, and/or other evidence in response to the court's inclinations are prohibited unless authorized by the court. The parties are also reminded that they must comply with Local Rule 7.8 if they intend to rely on uncited authorities at the hearing.

Occasionally, Judge Mollway does not announce an inclination, especially if materials are submitted to her right before the hearing. Because briefing on criminal motions closes just a few days before the hearing, it is not uncommon for her to be unable to announce an inclination on a criminal motion until the start of the hearing itself. Certainly if an evidentiary hearing is scheduled on matters necessary to a decision on either a civil or criminal motion, no inclination will be announced.

Judge Mollway's inclinations may not be cited as authority for any proposition. However, the inclinations will be electronically filed for the convenience of the parties.

Judge Mollway announces the following inclinations:

*EEOC v. MJC, Inc. et al.*, Civ. No. 17-00371 SOM-RLP

The EEOC complains that a Hawaii car dealership (Defendants MJC, Inc. and GAC Auto Group, Inc.) violated the Americans with Disabilities Act ("ADA") in failing to hire Ryan Vicari because of his hearing disability. *See* ECF 1. Before the court is Defendants' motion to (1) dismiss the Complaint for lack of subject matter jurisdiction; (2) stay the proceedings; or (3) dismiss the Complaint for failure to state a claim. Defendants allege that the EEOC failed to engage them in the informal conciliation process mandated by 42 U.S.C. § 2000e-5, and that the court should therefore dismiss the Complaint for lack of jurisdiction or issue a stay. Defendants also claim that the Complaint fails to adequately allege facts going to whether Vicari is a "qualified individual" under the ADA, and therefore does not state a claim upon which relief can be granted.

The court is inclined to (1) deny the motion to dismiss for lack of subject matter jurisdiction; (2) deny the motion for a stay; and (3) grant the motion to dismiss for failure to state a claim.

The court is inclined to deny Defendants' Rule 12(b)(1) motion. The court is inclined to hold that the EEOC's conciliation obligations under 42 U.S.C. § 2000e-5 are not jurisdictional requirements. The court is aware of the Ninth

Circuit's holding in *EEOC v. Pierce Packing Co.*, 669 F.2d 605, 608 (9th Cir. 1982), that "conciliation [is a] jurisdictional condition[] precedent to suit by the EEOC."  The court is inclined to reason that *Pierce Packing* is no longer authoritative in light of statements by the Supreme Court and the Ninth Circuit to the effect that "the appropriate remedy" following an EEOC failure to conciliate is "a stay," *Mach Mining*, 135 S. Ct. 1645, 1656 (2015), "not the dismissal of the aggrieved employees' claims" under Rule 12(b)(1) or otherwise, *Arizona ex rel. Horne v. Geo Grp., Inc.*, 816 F.3d 1189, 1199 (9th Cir. 2016), *cert. denied sub nom. Geo Grp., Inc. v. EEOC*, 137 S. Ct. 623 (2017).  The court is inclined to rule that statements about imposing a stay as a remedy cut in favor of deeming the conciliation requirement nonjurisdictional.  A stay can only be a remedy if a court has subject matter jurisdiction. *See Ex parte McCardle*, 74 U.S. (7 Wall.) 506, 515 (1869) ("[W]ithout jurisdiction [a federal] court cannot proceed *at all* in any cause." (emphasis added)).

      The court is also inclined to hold that *Pierce Packing* is inconsistent with the clear statement rule announced in *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 515-16 (2006).  This court is inclined to conclude that the text of 42 U.S.C. § 2000e-5(f)(1) does not speak in clearly jurisdictional terms, and that there is no historic line of Supreme Court precedents holding

3

that similar provisions are jurisdictional. The court is inclined to rule that conciliation is therefore not a jurisdictional requirement and that Defendants' Rule 12(b)(1) challenge fails.

The court is inclined to deny Defendants' request for a stay. Defendants complain that the EEOC did not provide Defendants with the factual basis underlying its determination; that the EEOC asked Defendants to pay damages; and that the EEOC did not tell Defendants what they should have "done differently." The court is inclined to understand the EEOC as arguing, without regard to whether Defendants' assertions are accurate, that its conduct, even as Defendants describe it, comports with the law. *See* ECF 20, PageID #s 123-24.

The court is inclined to recognize that the EEOC may, pursuant to its Title VII nondisclosure obligation, be holding back from the court certain communications that address the substance of any conciliation discussions. For that reason, the EEOC may be unable to dispute Defendants' characterization of the process. *See* 42 U.S.C. § 2000e-5(b); *Mach Mining*, 135 S. Ct. at 1655 n.2. But the court is inclined to reason that the EEOC remained fully capable of addressing facts material to the stay issue. *Mach Mining* held that judicial review of conciliation efforts concerns only "whether the EEOC attempted to confer about a charge, and not . . . what happened (i.e.,

4

statements made or positions taken) during those discussions."
135 S. Ct. at 1656.

The court is inclined to rule that the present record does not establish that the EEOC failed to satisfy its conciliation obligation. The court is inclined to rely on the standard from *Mach Mining*, which requires the agency to "tell the employer about the claim--essentially, what practice has harmed which person or class," and to "afford the employer a chance to discuss and rectify a specified discriminatory practice." 135 S. Ct. at 1652-53.

The court is inclined to read the record as suggesting that the EEOC did tell the employer about the claim in its Letter of Determination when it stated that Vicari had "alleged that [Defendants] refused to hire him because of his disability," and also told the employer that the EEOC had "determined that there is reasonable cause to believe that the Charging Party was denied hire because of a disability." *See* ECF 20-2, PageID # 136. The court is further inclined to rule that the letters submitted by Defendants further indicate that Defendants were aware at the time of any conciliation discussions that the EEOC was concerned about what had occurred during a job "interview" between Vicari and Guy Tsurumaki at Cutter Mazda. ECF 18-5, PageID # 95 n.2; ECF 18-6, PageID # 98 n.2; ECF 18-2, PageID # 88.

The court is inclined to rule that Defendants do not meet their burden as movants of showing that the EEOC failed to afford them "a chance to discuss and rectify [the] specified discriminatory practice." *Mach Mining*, 135 S. Ct. at 1653. The court is inclined to view the letters submitted by Defendants as illustrating that at least some discussions relating to the discrimination charge took place between the EEOC and Defendants. *See, e.g.*, ECF 18-3, PageID # 91 (indicating that Defendants' counsel "discuss[ed] issues related to the EEOC's letter of determination" with Kaopuiki over the phone). The court is also inclined to view the record as indicating that, during these discussions, the EEOC gave Defendants an opportunity to address the alleged discrimination. *See, e.g.*, ECF 18-4, PageID # 94 (indicating that Defendants declined such an opportunity because they were "not in a position to consider resolution without . . . the EEOC provid[ing] its factual basis for the conclusion that a violation occurred"); ECF 18-2, PageID # 89 (averring that the EEOC "repeatedly demanded that Defendants provide it with a counteroffer").

The court is inclined to reject Defendants' argument that the EEOC was obligated to provide them with "the factual basis" for its reasonable cause determination. *See Mach Mining*, 135 S. Ct. at 1653-54 (rejecting a requirement that the Commission "lay out 'the factual and legal basis for' all its

6

positions" and noting that "Congress left to the EEOC such strategic decisions as whether to lay all its cards on the table").

The court is inclined to rule that Defendants do not show that a stay is warranted based on the EEOC's alleged settlement offer and repeated demands that Defendants "provide it with a counteroffer." The court is inclined to reason that *Mach Mining* and *Geo Group* allow such a negotiating strategy. *See Mach Mining*, 135 S. Ct. at 1655 ("Congress left to the EEOC such strategic decisions as whether to make a bare-minimum offer . . . or to respond to each of an employer's counter-offers."); *id.* at 1654 (recognizing the possibility that the EEOC might make a "monetary request" during conciliation and rejecting the notion that the EEOC "must refrain from making 'take-it-or-leave-it' offers"); *Geo Grp.*, 816 F.3d at 1199 (holding that the EEOC satisfied its conciliation obligation even though it "proposed a settlement [that] include[ed] damages").

The court is further inclined to consider the Defendants' "damages extraction" argument as falling outside the permissible scope of judicial review. The court is inclined to rely on *Mach Mining*'s statement that Title VII "grant[s] the EEOC discretion over the pace and duration of conciliation efforts, the plasticity and firmness of its negotiating positions, *and the content of its demands for relief*," and

7

judicial review of "any of those choices" "extends too far." 135 S. Ct. at 1655 (emphasis added). The court is also inclined to hold that reviewing whether the EEOC did, in fact, repeatedly demand that Defendants provide it with a counteroffer would require the court to review "what happened (*i.e.*, statements made or positions taken) during [conciliation] discussions," which the Supreme Court has forbidden. *See id.* at 1656.

The court is inclined to reject Defendants' suggestion that "the EEOC is required to submit an affidavit" stating that it met its conciliation obligations. The court is inclined to read *Mach Mining* as stating only a sufficient condition pertaining to such an affidavit, not a necessary one. *See Mach Mining*, 135 S. Ct. at 1656 ("A sworn affidavit from the EEOC stating that it has performed the obligations . . . but that its efforts have failed *will usually suffice* to show that it has met the conciliation requirement." (emphasis added)). The court is also inclined to see the EEOC as having relied on more than "bookend" letters to support its position that it adequately conciliated: it also relies on the facts that "Defendants' own documents" establish. *See* ECF 20, PageID #s 123-24.

While the court is inclined not to dismiss on jurisdictional grounds and not to stay this action, the court is inclined to grant Defendants' alternative motion to dismiss the Complaint for failure to state a claim. The court is inclined

8

to read the Complaint as failing to allege facts going to whether Vicari was a qualified individual. *See Hutton v. Elf Atochem N. Am., Inc.*, 273 F.3d 884, 891 (9th Cir. 2001).

The Complaint does not discuss what the detailer position at Cutter Mazda involved. The only allegation regarding Vicari's status is that he is "hearing impaired." *See* ECF 1, PageID #s 5-6. The court is inclined to rule that this allegation is insufficient to address what the "job-related requirements of the [detailer] position" were, let alone whether Vicari was capable of performing them. See 29 C.F.R. § 1630.2(m).

The court is inclined to reject the EEOC's argument that dismissal is not warranted even if the EEOC failed to adequately plead that Vicari is a qualified individual. While stating a prima facie case under the ADA "is an evidentiary standard, not a pleading requirement," *Lambdin v. Marriott Resorts*, Civ. No. 14-00345 SOM/KSC, 2015 WL 263569, at *2 n.1 (D. Haw. Jan. 21, 2015) (quoting S*wierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002)), this court is inclined to rule that this does not mean that there is no pleading obligation whatsoever related to whether a claimant is a qualified individual. The court is inclined to rule that the EEOC must still allege *some* facts tending to show that Vicari was a qualified individual.

The court is inclined to deny the EEOC's request that the court take judicial notice that Cutter Mazda's "detailer position" "involves cleaning cars" and "does not require specialized skills." ECF 20, PageID # 131. The court is inclined to say that it has no basis on the present record for determining that this is a "generally known" matter. Fed. R. Evid. 201.

If the Complaint is dismissed, the court is inclined to grant the EEOC leave to amend the Complaint to correct any pleading defects.