IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) | Civ. No. 17-00371 SOM-RLP |
| Plaintiff, | ) ) | ORDER DENYING DEFENDANTS' MOTION TO STAY PLAINTIFF'S COMPLAINT FOR FAILURE TO |
| vs. | ) ) | SATISFY 42 U.S.C. § 2000e-5, AND GRANTING DEFENDANTS' |
| MJC, INC.; GAC AUTO GROUP, INC. DBA CUTTER MAZDA OF HONOLULU; AND DOES 1-10 INCLUSIVE. | ) ) ) ) | MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM |
| Defendants. | ) ) ) | |
| _____ | ) | |

**ORDER DENYING DEFENDANTS' MOTION TO STAY PLAINTIFF'S
COMPLAINT FOR FAILURE TO SATISFY 42 U.S.C. § 2000e-5, AND
GRANTING DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**

**I.      INTRODUCTION.**

Plaintiff Equal Employment Opportunity Commission

("EEOC") complains that Defendants MJC, Inc., and GAC Auto

Group, Inc., which separately or together own or operate a car

dealership, violated the Americans with Disabilities Act ("ADA")

by failing to hire Ryan Vicari because he had a hearing

disability.  Defendants move to stay the proceedings on the

ground that the EEOC allegedly failed to engage in the informal

conciliation process mandated by 42 U.S.C. § 2000e-5, which is a

condition precedent to an EEOC lawsuit.  Defendants also move to

dismiss the Complaint for failure to state a claim, arguing that

the Complaint fails to adequately allege that Vicari is a

"qualified individual" under the ADA.

The court declines to issue a stay but grants the motion to dismiss. Defendants fail to meet their burden as movants of showing that a stay is warranted. This court does, however, dismiss the Complaint because it fails to allege facts tending to show that Vicari is a qualified individual under the ADA.

## II.      FACTUAL BACKGROUND.

Defendants are two Hawaii corporations, GAC Auto Group, Inc., and MJC, Inc., and some of their unidentified employees ("Does 1-10" in the Complaint). ECF 1, PageID #s 2-3. GAC Auto Group is the legal name of a car dealership doing business as Cutter Mazda of Honolulu. *See id.* at PageID # 3. GAC Auto Group is wholly owned by MJC, which, in turn, manages the dealership. *Id.* GAC Auto Group and MJC jointly have hiring and firing rights for the dealership. *Id.*

On July 31, 2017, the EEOC filed a Complaint alleging that "Defendants have engaged in unlawful employment practices in violation of Section 102(a) and (b) of the ADA, 42 U.S.C. § 12112(a) and (b)." ECF 1, PageID #s 5, 8. The ADA provides:

> No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.
>
> . . .

> [A qualified individual is] an individual
> who, with or without reasonable
> accommodation, can perform the essential
> functions of the employment position that
> such individual holds or desires.

42 U.S.C. §§ 12111(8), 12112(a).

The EEOC alleges that Defendants failed to hire Ryan Vicari, who is deaf, "based on his actual . . . [and] perceived disability" after he "applied for [a car] detailer position with Defendants on June 24, 2015." *Id.* at PageID #s 5-6. The EEOC presents the events of June 24, 2015, succinctly:

> Charging Party [i.e., Ryan Vicari] was
> interviewed on or about [June 24, 2015,] by
> Defendants.  During the interview,
> Defendants were informed that Charging Party
> is hearing impaired and can read lips.  In
> response, Defendants stated they could not
> hire Charging Party because he was deaf and
> ended the interview.  Consequently, Charging
> Party was not considered and/or hired for
> the detailer position and/or any other
> position with Defendants.

*Id.* at PageID # 6.  The EEOC seeks compensatory and punitive damages for Vicari, "reinstatement or front pay," an injunction forbidding Defendants from engaging in further disability discrimination, and an order requiring Defendants to implement prophylactic policies and programs.  *See id.* at PageID #s 6-7; *see also* 42 U.S.C. § 2000e-5(g)(1) (detailing a federal court's remedial powers under the ADA).

Defendants deny that they failed to hire Vicari for the detailer position because he is deaf.  Instead, Defendants say they truthfully advised Vicari "that there were no detailer positions available."  ECF 18-1, PageID # 76.  Defendants claim that they then

> interview[ed] [Vicari] for the only
> available position--a Service Lot Attendant.
> [But] [d]ue to the nature of the Service Lot
> Attendant position, which requires constant
> communication with other employees via two-
> way radios, often while driving, Defendants
> understood that Mr. Vicari would not have
> been able to fulfill the essential functions
> of the position.

*Id.* at PageID #s 76-77.  This particular factual dispute is not currently before the court.

Defendants have moved to stay the present action following the EEOC's alleged failure to engage Defendants in the informal conciliation process mandated by 42 U.S.C. § 2000e-5(b), which is a condition precedent to an EEOC lawsuit against an employer.  *See* ECF 18-1, PageID #s 80-83; 42 U.S.C. § 2000e-5(b), (f)(1); *see also Mach Mining, LLC v. EEOC*, 135 S. Ct. 1645, 1649 (2015) ("Before suing an employer for discrimination, the Equal Employment Opportunity Commission . . . must try to remedy unlawful workplace practices through informal methods of conciliation.").  Defendants claim that the EEOC failed *in fact* to conciliate; they do not contest the adequacy of the Complaint's allegations on this score.  *See* ECF 18-1, PageID

# 76.  Defendants' stay request is brought under Rule 7 and Rule 12(b)(1) of the Federal Rules of Civil Procedure and 42 U.S.C. § 2000e-5(f)(1).  ECF 18, PageID # 73.

Defendants have also moved under Rule 12(b)(6) to dismiss the Complaint for failure to state a claim.  Defendants describe the Complaint as deficient because it fails to set forth facts tending to show that Vicari is a "qualified individual" under the ADA.  *Id.*

The court first assures itself of jurisdiction over this matter, then addresses the stay and the Rule 12(b)(6) matter.

## III.     THE COURT HAS JURISDICTION.

Defendants' Motion requests a stay under Rule 12(b)(1) of the Federal Rules of Civil Procedure, in addition to Rule 7 and 42 U.S.C. § 2000e-5(f)(1).  *See* ECF 18, PageID # 73.  Rule 12(b)(1) authorizes a court to dismiss claims over which it lacks subject matter jurisdiction.  *See* Fed. R. Civ. P. 12(b)(1).  At the hearing on January 8, 2018, Defendants clarified that they are not moving to dismiss for lack of subject matter jurisdiction, and are only seeking to stay this court's proceedings pending further conciliation efforts.  ECF 23.  The court nevertheless assures itself of its subject matter jurisdiction over this matter.  *See Leeson v. Transam. Disability Income Plan*, 671 F.3d 969, 975 n.12 (9th Cir. 2012)

(explaining that if a court lacks subject matter jurisdiction, it must dismiss the complaint, *sua sponte* if necessary).

Title VII, and by extension the ADA,[1] grants this court jurisdiction over EEOC lawsuits generally. *See* 42 U.S.C. § 2000e-5(f)(3) ("Each United States district court . . . shall have jurisdiction of actions brought under this subchapter. Such an action may be brought in any judicial district court in the State in which the unlawful employment practice is alleged to have been committed."). Title VII also sets forth various conditions precedent to an EEOC lawsuit against an employer. *See* 42 U.S.C. § 2000e-5(b). One such condition requires the agency, before it "may bring a civil action," to "endeavor to eliminate any . . . alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion." *Id.* § 2000e-5(b), (f)(1). This court concludes that this conciliation requirement is not "jurisdictional"; that is, a federal court is not required to dismiss an ADA action for lack of subject matter jurisdiction whenever the EEOC fails to satisfy this obligation prior to filing suit. *See Hamer v. Neighborhood Hous. Servs. of Chicago*, 138 S. Ct. 13, 17 (2017) (explaining that a "[f]ailure to comply with a jurisdictional

---

[1] The ADA incorporates Title VII's enforcement mechanisms, including those contained at 42 U.S.C. § 2000e-5. *See* 42 U.S.C. § 12117(a). This Order therefore refers to both the ADA and Title VII.

[requirement] . . . deprives a court of adjudicatory authority over the case, necessitating dismissal").

This court exercises jurisdiction regardless of whether the EEOC conciliated. Title VII empowers a court, in the event of nonconciliation, to "*stay* further proceedings for not more than sixty days pending . . . further efforts of the Commission to obtain voluntary compliance." 42 U.S.C. § 2000e-5(f)(1) (emphasis added). In *Mach Mining, LLC v. EEOC*, 135 S. Ct. 1645, 1656 (2015), the Supreme Court declared that "the appropriate remedy [following a failure to conciliate] is to order the EEOC to undertake the mandated efforts to obtain voluntary compliance," given the statute's authorization of a stay for that purpose. *Id.* (citing 42 U.S.C. § 2000e-5(f)(1)). The Ninth Circuit, following *Mach Mining*, has recently held that "if the EEOC . . . failed to conciliate prior to bringing suit, the appropriate remedy [is] a stay of proceedings to permit an attempt at conciliation, *not the dismissal of the aggrieved employees' claims*." *Arizona ex rel. Horne v. Geo Grp., Inc.*, 816 F.3d 1189, 1199 (9th Cir. 2016) (emphasis added), *cert. denied sub nom. Geo Grp., Inc. v. EEOC*, 137 S. Ct. 623 (2017).

The Ninth Circuit in *Geo Group* did not discuss its earlier ruling in *EEOC v. Pierce Packing Co.*, 669 F.2d 605, 608-09 (9th Cir. 1982), which held that "conciliation [is a] jurisdictional condition[] precedent to suit by the EEOC," and

7

which affirmed a dismissal for lack of jurisdiction. But this court need not wait for an express abrogation of *Pierce Packing* by the Ninth Circuit. *See Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (en banc) (indicating that district courts are not bound by circuit precedent so long as "intervening Supreme Court authority is clearly irreconcilable with [the] prior circuit authority"). The court's very power to impose a stay indicates that Congress did not intend the conciliation requirement to be jurisdictional in nature. It is a time-honored principle that "without jurisdiction [a federal] court cannot proceed *at all* in any cause." *Ex parte McCardle,* 74 U.S. (7 Wall.) 506, 515 (1869) (emphasis added). The statements in *Geo Group* and *Mach Mining*, as well as the statutory authorization to stay--not dismiss--proceedings following a failure to conciliate, make it clear that *Pierce Packing* has been abrogated and § 2000e-5(f)(1)'s conciliation requirement is not jurisdictional in nature.

Mach Mining aside, *Pierce Packing* is also clearly irreconcilable with an additional line of Supreme Court cases stating that a clear statement of legislative intent to make a matter jurisdictional is a threshold requirement for a court's conclusion that subject matter jurisdiction is in issue. Under the rule announced in 2006 in *Arbaugh v. Y&H Corp.*,

> if the Legislature clearly states that a
> threshold limitation on a statute's scope
> shall count as jurisdictional, then courts
> . . . will not be left to wrestle with the
> issue.  But when Congress does not rank a
> statutory limitation on coverage as
> jurisdictional, courts should treat the
> restriction as nonjurisdictional in
> character.

546 U.S. 500, 515-16; *see* Erin Morrow Hawley, *The Supreme Court's Quiet Revolution: Redefining the Meaning of Jurisdiction*, 56 Wm. & M. L. Rev. 2027, 2044 (2015) (identifying *Arbaugh* as the origin of the jurisdictional clear statement rule).  Since *Arbaugh*, the Supreme Court has advised federal courts that, in the absence of clear congressional intent, they should not "lightly attach" the "drastic" consequences that attend labeling a statutory requirement "jurisdictional." *Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012); *see also Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 435 (2011) (explaining that the jurisdictional clear statement rule covers even statutory provisions that are "important and mandatory").

Under the clear statement rule, which the Supreme Court announced decades after the Ninth Circuit decided *Pierce Packing*, the conciliation requirement is not "an ingredient of subject-matter jurisdiction." *See Arbaugh*, 546 U.S. at 503, 514.  First, the text of § 2000e-5(f)(1) does not speak in clearly jurisdictional terms.  *Arbaugh* noted that another Title VII provision, which restricted Title VII liability to employers

9

with "fifteen or more employees," did not speak in clearly jurisdictional terms. *See* 546 U.S. at 504 (quoting 42 U.S.C. § 2000e(b) (2006)). The conciliation provision, like *Arbaugh*'s employee-numerosity requirement, does not by its terms "refer in any way to the jurisdiction of the district courts." *See* 546 U.S. at 502 (quoting *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 394 (1982)). *Compare* 42 U.S.C. § 2000e-5(f)(1) ("If . . . the Commission has been unable to secure from the respondent a conciliation agreement acceptable to the Commission, the Commission may bring a civil action."), *and id.* § 2000e(b) (providing that employers are liable only if they have "fifteen or more employees"), *with id.* § 2000e-5(f)(3) (defining the "jurisdiction" of federal courts under Title VII).

Second, "clear jurisdictional language" appears elsewhere in Title VII, establishing that Congress knew how to speak in jurisdictional terms if it so desired. *See Gonzales v. Thaler*, 565 U.S. 134, 142-43 (2012). *Arbaugh* noted that the employee-numerosity requirement "appear[ed] in a separate provision" of Title VII than the expressly jurisdictional provision located in § 2000e-5(f)(3). *See Arbaugh*, 546 U.S. at 515 (discussing 42 U.S.C. § 2000e(b)). Similarly, the conciliation provision is in a separate area of Title VII. *See* 42 U.S.C. § 2000e-5(f)(1), (f)(3); Civil Rights Act of 1964, Pub. L. 88-352 § 706 (e)-(f), 78 Stat. 260-61 (1964).

Congressional use of express jurisdictional language elsewhere in Title VII cautions against reading the conciliation provision as containing an additional, subtler jurisdictional limitation.

Finally, "context, including [the Supreme] Court's interpretation of similar provisions in many years past, is relevant to whether a statute ranks a requirement as jurisdictional." *Gonzales*, 565 U.S. at 142 n.3 (quoting *Reed Elsevier, Inc. v. Muchnick,* 559 U.S. 154, 168 (2010)). This court is unaware of any Supreme Court case deeming a similar provision jurisdictional. *See EEOC v. Farmers Ins. Co.*, 24 F. Supp. 3d 956, 964 (E.D. Cal. 2014) ("[T]here is no long line of Supreme Court precedent holding that conciliation is the type of requirement that has historically been treated as jurisdictional in nature." (quoting *EEOC v. Alia Corp.*, 842 F. Supp. 2d 1243, 1254 (E.D. Cal. 2012)). Absent such history, or a clear textual statement, this court does not deem the conciliation requirement to be jurisdictional.

In sum, the Ninth Circuit's 1982 decision in *Pierce Packing* is no longer authoritative in light of intervening authority from two sources: *Mach Mining* and its progeny (like the Ninth Circuit's decision in *Geo Group*), and the line of decisions beginning with *Arbaugh v. Y&H Corp*. In so concluding, this court joins other district courts in this circuit. *See, e.g., EEOC v. Marquez Bros. Int'l Inc.*, No. 1:17-CV-0044-AWI-

EPG, 2017 WL 4123915, at *3 (E.D. Cal. Sept. 18, 2017) (Ishii, J.) (holding that "the requirements of Section 2000e-5(f)(1) are non-jurisdictional"); *EEOC v. Evans Fruit Co.*, 872 F. Supp. 2d 1107, 1115 (E.D. Wash. 2012) (Suko, J.) ("Title VII's conciliation requirement, while a precondition to suit, is not jurisdictional and . . . to the extent *EEOC v. Pierce Packing Co.* holds otherwise, it is inconsistent with current Supreme Court jurisprudence." (citation omitted)); *EEOC v. Alia Corp.*, 842 F. Supp. 2d 1243, 1254 (E.D. Cal. 2012) (O'Neill, J.) ("*Pierce Packing* . . . has been fatally undermined and can no longer be reconciled with current Supreme Court jurisprudence.").

Satisfied that it has jurisdiction, the court now addresses whether a stay is appropriate in this case.

**IV.    THE COURT DECLINES TO STAY THE PROCEEDINGS.**

**A.    Standard Governing Defendants' Stay Request.**

"The proponent of a stay bears the burden of establishing its need." *Clinton v. Jones*, 520 U.S. 681, 708 (1997) (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936)). In *Mach Mining*, the Supreme Court discussed how a court should assess a factual dispute concerning conciliation:

> If . . . the employer provides credible
> evidence of its own . . . indicating that
> the EEOC did not provide the requisite
> information about the charge or attempt to
> engage in a discussion about conciliating

12

the claim, a court must conduct the
factfinding necessary to decide that limited
dispute.  Should the court find in favor of
the employer, the appropriate remedy is to
order the EEOC to undertake the mandated
efforts to obtain voluntary compliance.  *See*
§ 2000e-5(f)(1) (authorizing a stay of a
Title VII action for that purpose).

135 S. Ct. at 1656.  If, on the other hand, the employer

provides no credible evidence indicating that the EEOC failed to

conciliate, the court should decline to issue a stay.  *See Geo*

*Grp.*, 816 F.3d at 1201-02.

> **B.  Defendants Have Not Put Forward Credible Evidence
> Indicating that the EEOC Failed to Conciliate.**

There is no dispute that the EEOC has a statutory duty

"to attempt conciliation of a discrimination charge prior to

filing a lawsuit."  *Mach Mining, LLC v. EEOC*, 135 S. Ct. 1645,

1651 (2015) (discussing 42 U.S.C. § 2000e-5(b)).  "Only if the

Commission is 'unable to secure' an acceptable conciliation

agreement--that is, only if its attempt to conciliate has

failed--may a claim against the employer go forward."  *Id.*

(quoting 42 U.S.C. § 2000e-5(f)(1)).

The issue of whether the EEOC conciliated is subject

to judicial review, although such "review is narrow."  *Id.* at

1656; *see also id.* at 1652 (noting that "the statute provides

the EEOC with wide latitude over the conciliation process").  To

satisfy its conciliation obligation, the EEOC

> must tell the employer about the claim--
> essentially, what practice has harmed which
> person or class--and must provide the
> employer with an opportunity to discuss the
> matter in an effort to achieve voluntary
> compliance. . . . [Put otherwise,] the EEOC
> [must] afford the employer a chance to
> discuss and rectify a specified
> discriminatory practice.

*Id.* at 1652-53. The employer, by contrast, "has no duty at all to confer or exchange proposals." *Id.* at 1654.

Title VII also requires the EEOC to keep anything "said or done" during the conciliation process confidential. 42 U.S.C. § 2000e-5(b). This nondisclosure requirement bars the agency from using information disclosed during conciliation "as evidence in a subsequent proceeding without the written consent of the persons concerned." *Id.* "[T]o effect a waiver Title VII requires the 'written consent of' . . . not just the employer but the [employee-]complainant too." *Mach Mining*, 135 S. Ct. at 1655 n.2 (quoting 42 U.S.C. § 2000e-5(b)); *see also id.* (explaining that "the *employer's* decision to contest the EEOC's conciliation efforts cannot waive, by 'deem[ing]' or otherwise, the *employee's* statutory rights." (first alteration in original) (internal citation omitted)). The Supreme Court in *Mach Mining* was careful to ensure that judicial review of conciliation "can occur consistent with the statute's non-disclosure provision," holding that a reviewing court should look only "to whether the EEOC attempted to confer about a charge, and not to what

happened (*i.e.*, statements made or positions taken) during those discussions." *Id.* at 1656.

Apart from these "limited" conciliation obligations, "Title VII's conciliation provision smacks of flexibility." *Id.* The EEOC is not subject to a "good faith" bargaining requirement. *See id.* at 1653-55; *see also Geo Grp.*, 816 F.3d at 1199 ("[T]he EEOC, like any party to litigation, may not negotiate in good faith."). Instead, Title VII gives the agency "expansive discretion" over how to conduct itself during conciliation discussions:

> [T]he EEOC need only 'endeavor' to conciliate a claim, without having to devote a set amount of time or resources to that project. Further, the attempt need not involve any specific steps or measures; rather, the Commission may use in each case whatever 'informal' means of 'conference, conciliation, and persuasion' it deems appropriate. . . . Congress left to the EEOC such strategic decisions as whether to make a bare-minimum offer, to lay all its cards on the table, or to respond to each of an employer's counter-offers, however far afield. So too Congress granted the EEOC discretion over the pace and duration of conciliation efforts, the plasticity or firmness of its negotiating positions, and the content of its demands for relief. For a court to assess any of those choices . . . is not to enforce the law Congress wrote, but to impose extra procedural requirements.

135 S. Ct. at 1654-55, 1656 (citation omitted) (quoting 42 U.S.C. § 2000e-5(b)).

Defendants claim that the EEOC's conciliation efforts in this case do not survive even what *Mach Mining* called "relatively barebones" judicial review. *See id.* at 1656; ECF 18-1, PageID # 76. Defendants do not dispute the adequacy of the Complaint's allegations on this score. *See* ECF 1, PageID # 5 ("All conditions precedent to the institution of this lawsuit have been fulfilled."); *id.* ("The Commission engaged in [conciliation] communications with Defendants."); *see also* Fed. R. Civ. P. 9(c) ("[I]t suffices [for a Complaint] to allege generally that all conditions precedent have occurred or been performed."). Instead, Defendants aver that, as a factual matter, the EEOC only "paid lip service" to the conciliation requirement. ECF 18-1, PageID # 76. To support this contention, Defendants submit a declaration by Joachim Cox, Defendants' counsel of record, and copies of various letters that Cox sent to the EEOC taking issue with aspects of the conciliation process. ECF 18-1, PageID # 76; ECF 18-2; ECF 18-3; ECF 18-4; ECF 18-5; ECF 18-6.

The EEOC responds that "Defendants' own documents reveal that the EEOC engaged Defendants to try and resolve the alleged discriminatory practice by undertaking written and oral discussions," which, in the agency's view, is all that *Mach Mining* requires. *See* ECF 20, PageID #s 123-24. The EEOC also provided the court with a copy of the Determination Letter that

it sent Defendants and a declaration of its own.  *See* ECF 20-1;
ECF 20-2.  The EEOC declined to submit any other evidence,
citing the statutory nondisclosure provision.  ECF 20, PageID
# 123 n.2; *see* 42 U.S.C. § 2000e-5(b)(1).

The parties do not contest the authenticity of each
other's submissions; they only dispute their legal significance.
*See* ECF 18; ECF 20; ECF 21.  This court recognizes that the
EEOC, pursuant to its nondisclosure obligations, may have
withheld certain communications concerning the *substance* of
conciliation discussions.  That may hamper the EEOC's ability to
dispute Defendants' characterization of the conciliation
process.  *See* ECF-1, PageID #s 81-82 (characterizing
conciliation discussions as, in Defendants' view, an EEOC
attempt "to extract a monetary settlement"); ECF 20, PageID
# 123 n.2 (explaining that the EEOC "cannot provide" any
communications divulging what was "said or done during"
conciliation (citing 42 U.S.C. § 2000e-5(b))).  But even
assuming that the EEOC would, if it could, dispute Defendants'
account of these discussions, any such dispute would be
immaterial.  As *Mach Mining* explained, judicial review of
conciliation efforts concerns only "whether the EEOC attempted
to confer about a charge, and not . . . what happened (*i.e.*,
statements made or positions taken) during those discussions."
135 S. Ct. at 1656.  Even if the EEOC has refrained from

disputing Defendants' account, it is relying on "Defendants' own documents" as establishing that the EEOC did indeed engage in conciliation. *See* ECF 20, PageID #s 123-24.

After reviewing the evidence, which is discussed in detail below, the court determines that Defendants failed to "provide[] credible evidence . . . indicating that the EEOC did not provide the requisite information about the charge or attempt to engage in a discussion about conciliating the claim." *Mach Mining*, 135 S. Ct. at 1656. The court denies the stay request.

### 1. The EEOC's Determination Letter.

A Determination Letter sent by the EEOC to Defendants on May 26, 2017, stated that Ryan Vicari (the "Charging Party) had "allege[d] that [Defendants] refused to hire him because of his disability, in violation of the ADA." ECF 20-2, PageID #s 136-37. The Letter said that the EEOC had investigated Vicari's charge and "determined that there is reasonable cause to believe that the Charging Party was denied hire because of a disability as defined under the ADA." *Id.* at PageID # 136. The Commission also "determined Defendants failed to provide a reasonable accommodation to Charging Party because of a disability, as defined under the ADA. Further, the Commission found that Charging Party was denied hire based on a perceived disability." *Id.* at PageID # 136-37. On the topic of

conciliation, the Letter invited Defendants and Vicari "to join with [the EEOC] in a collective effort toward a just resolution of this matter," explaining that Investigator Kris Kaopuiki would contact Defendants shortly "to begin conciliation discussions." *Id.* at PageID # 137.

**2. Letters from Defendants to the EEOC.**

Defendants furnished four communications sent by Joachim P. Cox, their counsel of record, to Kris Kaopuiki of the EEOC. ECF 18-3; ECF 18-4; ECF 18-5; ECF 18-6.

**a. June 14 Email from Cox to Kaopuiki.**

An email from Cox dated June 14, 2017, stated that he and Kaopuiki had spoken on the phone "th[at] afternoon" and had agreed to "continue to discuss issues related to the EEOC's letter of determination." ECF 18-3, PageID # 91. Cox wrote that Defendants, in the upcoming discussions,

> expect[] to be provided more information
> from the EEOC as to what was expected to
> have occurred [during the interview with
> Ryan Vicari] in order to satisfy an inquiry
> into the potential for a reasonable
> accommodation related to Mr. Vicari . . .
> [and also expect] more information from the
> EEOC in regard to what reasonable
> accommodation is believed to have been
> available in this matter and/or overlooked
> by [Defendants].

*Id.*

**b.    June 22 Letter from Cox to Kaopuiki.**

On June 22, 2017, Cox sent Kaopuiki a letter

responding to a prior EEOC "letter, dated June 21st."[2]   ECF 18-4,

PageID # 93.  Cox took issue with the EEOC's claim that

Defendants had "failed to provide a reasonable accommodation to

Charging Party because of a disability."  *Id.* at PageID # 94.

Cox responded that "it is apparent that EEOC has not yet

satisfied its investigative role" and insisted that,

> in order to fairly and accurately assess the
> allegations made by Mr. Vicari, EEOC needs
> to be in a position to answer, at a minimum:
> (1) What inquiry, in regard to potential
> reasonable accommodations, is expected of
> Cutter Mazda? (2) How is it that Cutter
> Mazda did not satisfy any expected inquiry
> into the potential for reasonable
> accommodations? and (3) What were the
> reasonable accommodations that were
> allegedly overlooked by Cutter Mazda?

*Id.*  Cox explained that, in asking these questions, he sought

"the factual basis" for the EEOC's "merits determination."  *Id.*

On the issue of conciliation, Cox wrote that Defendants were

"not in a position to consider resolution without an

understanding of what it is that allegedly was done wrong or

could have been done correctly," and again "requested that the

EEOC provide its factual basis for the conclusion that a

violation occurred."  *Id.*

---

[2] Neither party submitted a copy of this letter or any other
substantive communication sent by the EEOC to Defendants, aside
from the EEOC's Determination Letter.

**c.    June 28 Letter from Cox to Kaopuiki.**

On June 28, 2017, Cox responded to another EEOC

"letter, dated June 28th."  ECF 18-5, PageID # 95.  Cox said he

had submitted this letter "in furtherance of prompt settlement

and resolution . . . in light of the EEOC's . . . primary

statutory goals of resolution of employment claims through

investigation, conciliation and mediation."  *Id.* at PageID # 95

n.1.  Cox, in an apparent reference to Title VII's nondisclosure

provision, warned the agency that "[t]he information in this

letter may not be disclosed by [the EEOC] to any private party

without [Defendants'] prior consent."  *Id.*

Cox took issue with the EEOC's alleged refusal to

"respond to requests for" the "facts supporting its [reasonable

cause] determination," and argued that the EEOC had thereby

"remove[d] from Cutter Mazda the opportunity to engage in the

conciliation and resolution process."  *Id.* at PageID # 96.  Cox

disagreed with the EEOC's "suggestions," evidently set forth in

an earlier communication, that 1) the Determination Letter

"'outlined the basis' for the EEOC's [merits] determination,"

and 2) Defendants were "aware of the factual basis of the EEOC's

finding" given their "cooperation in responding to . . .

requests for information and interviews."  *Id.* at PageID # 95

(internal citation omitted).  Cox argued that the EEOC, by

failing to answer his questions, had "abandon[ed] its mandate to

fairly and accurately assess the allegations"; he "urge[d] the EEOC to first satisfy its investigative role and then allow Cutter Mazda to appropriately participate in the conciliatory process." *Id.* at PageID # 96.

### d. July 3 Letter from Cox to Kaopuiki.

Cox sent a letter Kaopuiki dated July 3, 2017, which responds to a prior EEOC "letter, dated June 29th." ECF 18-6, PageID # 98. Cox reiterated that "Cutter Mazda wants . . . the information EEOC relied upon in support of its determination"; "a fair investigation"; "and then, if needed, the full conciliation opportunity allowed by law." *Id.* Cox again noted that his letter was "submitted in furtherance of prompt settlement and resolution of the charge . . . in light of the EEOC's . . . primary statutory goals of resolution of employment claims through investigation, conciliation and mediation," and warned that the agency could not disclose its contents. *Id.* at PageID #s 98-99.

### 3. Declaration of Eric Yau, EEOC Trial Attorney.

Eric Yau submitted a short declaration stating that the EEOC had issued a "Conciliation Fail Letter on July 18, 2017 informing Defendants that efforts to conciliate the Charge referenced in the [Determination Letter] have failed." ECF 20-1, PageID # 135. The court does not have a copy of the

22

Conciliation Fail Letter.

### 4. Declaration of Joachim P. Cox, Defendants' Counsel of Record.

Cox's declaration discusses the EEOC's investigation into Vicari's charge and the parties' subsequent conciliation efforts. ECF 18-2. Cox avers that in "March 2016, EEOC's local office interviewed Guy Tsurumaki, the Assistant Service Manager who had [originally] interviewed Mr. Vicari." *Id.* at PageID # 88. Defendants "allowed Mr. Tsurumaki to be re-interviewed in February 2017." *Id.*

Later, during "the conciliatory process," Defendants requested the "factual basis for [the EEOC's] allegations," including:

> 1. What information, in regard to potential reasonable accommodations, is expected of Cutter Mazda?
>
> 2. How is it that Cutter Mazda did not satisfy any expected inquiry into the potential for any reasonable accommodation?
>
> 3. What were the reasonable accommodations that were allegedly overlooked by Cutter Mazda?

*Id.* at PageID # 89. Cox avers that this information "was necessary for Defendants to evaluate not only the reasonableness of the EEOC's demand [for settlement] but also to allow Defendants to endeavor within the conciliatory process to eliminate any such alleged wrongdoing." *Id.* According to Cox, the EEOC had "refused to provide Defendants with any of the

requested information" and instead had "repeatedly demanded that Defendants provide it with a counteroffer." *Id.* "Eventually, the EEOC summarily rejected Defendants' further efforts [to obtain the requested information] and . . . summarily ended the conciliatory process." *Id.*

### 5. The Legal Import of the Parties' Evidence.

The court agrees with the EEOC that the record, including Defendants' own documents, establishes that the EEOC's conciliation efforts satisfied *Mach Mining*. *See* ECF 20, PageID #s 123-24. A stay is therefore not warranted.

The documents establish that the EEOC told Defendants "about the claim." *See Mach Mining*, 135 S. Ct. at 1652. As the Supreme Court explained, before bringing suit "the EEOC must inform the employer about the specific allegation"-- "describ[ing] both what the employer has done and which employees . . . have suffered as a result," which "it typically does in a letter announcing its determination of 'reasonable cause.'" *Id*. at 1655-56. The EEOC's Determination Letter to Defendants states that "Ryan Vicari" "alleged that [Defendants] refused to hire him because of his disability," and that the EEOC had "determined that there is reasonable cause to believe that the Charging Party was denied hire because of a disability." ECF 20-2, PageID #s 136-37. Additional letters, sent by Defendants' counsel, indicate that Defendants were

aware, based on additional discussions with the EEOC, that the dispute concerned what had happened during a job interview between Vicari and Guy Tsurumaki at Cutter Mazda. ECF 18-5, PageID # 95 n.2; ECF 18-6, PageID # 98 n.2; ECF 18-2, PageID # 88. Defendants were sufficiently on notice about the claim.

Defendants' desire for a more detailed "factual basis" underlying the EEOC's reasonable cause determination does not alter the analysis. *Mach Mining* expressly held that the EEOC has no obligation to "lay out 'the factual and legal basis for' all its positions." 135 S. Ct. at 1653-54 (citation omitted). Such a requirement, the Supreme Court explained, "conflict[s] with the latitude Title VII gives the Commission" insofar as "Congress left to the EEOC such strategic decisions as whether to lay all its cards on the table." *Id*. at 1654. The EEOC did not have to tell Defendants *why* the investigation culminated in the reasonable cause determination; it only had to--and did-- describe what it thought "the employer ha[d] done" and who "ha[d] suffered as a result." *See id*. at 1656.

The letters and affidavits also indicate that the EEOC "afford[ed] the employer a chance to discuss and rectify [the] specified discriminatory practice." *Id*. at 1653. Under *Mach Mining*, the EEOC had to "try and engage the employer in some form of discussion (whether written or oral), so as to give the employer an opportunity to remedy the alleged discriminatory

practice." *Id.* at 1656. The evidence establishes that "some form of discussion" took place between the EEOC and Defendants. Cox's June 14 email states that he and Kaopuiki had, that very day, "discuss[ed] issues related to the EEOC's letter of determination." ECF 18-3, PageID # 91. Cox also wrote that Defendants "expect[] to be provided *more* information from the EEOC as to what was expected to have occurred" during the interview with Vicari. *Id.* (emphasis added). Additional Cox letters indicate that the EEOC sent follow-up communications dated, respectively, "June 21st," "June 28th," and "June 29th." ECF 18-4, PageID # 93; ECF 18-5, PageID # 95; ECF 18-6, PageID # 98.

Cox's letters clearly concern the EEOC's reasonable cause determination. *See, e.g.*, ECF 18-4, PageID # 93 (disputing the EEOC's determination that Defendants "failed to provide a reasonable accommodation to Charging Party because of a disability"); ECF 18-5, PageID # 96 (asking the EEOC for "facts supporting its determination"). Cox's letters even suggest that Defendants understood that they were in the middle of the conciliation process; two of the letters invoke the EEOC's nondisclosure obligation over communications exchanged during conciliation. *See* 42 U.S.C. § 2000e-5(b); ECF 18-5, PageID # 95 n.1 ("The information presented in this letter is submitted in furtherance of prompt settlement and resolution of

the charge . . . in light of the EEOC's . . . statutory goals of resolution of employment claims through investigation, conciliation and mediation.  The information in this letter may not be disclosed by [the EEOC] to any private party without [Defendants'] prior consent."); ECF 18-6, PageID # 98 n.1 (same).  In short, Cox's letters do not indicate that the EEOC failed to discuss the discrimination claim with Defendants; they affirmatively suggest that the EEOC engaged Defendants in conciliation discussions.

The evidence also indicates that the EEOC gave Defendants "an opportunity to remedy the alleged discriminatory practice."  *See Mach Mining*, 135 S. Ct. at 1656.  *Mach Mining* permitted an "offer-counteroffer" strategy, rejecting the idea that the Commission "must refrain from making 'take-it-or-leave-it' offers," and explaining that "Congress left to the EEOC such strategic decisions as whether to make a bare-minimum offer . . . or to respond to each of an employer's counter-offers, however far afield."  *Id.* at 1654-55.

In his declaration, Cox avers that the EEOC "repeatedly demanded that Defendants provide it with a counteroffer."  ECF 18-2, PageID # 89.  Cox's reference to a "counteroffer" implies that the EEOC also "offered" to settle the claim on undisclosed terms.  *See id.; see also* ECF 18-1, PageID #s 81-82 (describing the EEOC's conciliation behavior as

an attempt "to extract a monetary settlement"). Cox's June 22 letter indicates that Defendants declined the EEOC proposal, as he writes in response to an earlier EEOC communication that Defendants were "not in a position to consider resolution without . . . the EEOC provid[ing] its factual basis for the conclusion that a violation occurred." ECF 18-4, PageID # 94.[3] The EEOC offer referenced in Cox's affidavit appears to have provided Defendants with an "opportunity" to address the alleged discrimination. *See Mach Mining*, 135 S. Ct. at 1656. It does not matter that Defendants declined to respond with an offer of their own. *See id.* at 1654 (explaining that the employer "has no duty at all to confer or exchange proposals").

Given the submissions before it, this court concludes that Defendants have failed to carry their burden of providing "credible evidence" indicating a lack of conciliation. *See Mach Mining*, 135 S. Ct. at 1656. The court's determination gains further support from the Ninth Circuit's 2016 decision in *Geo Group*, which held that the EEOC "sufficiently conciliated" "in light of *Mach Mining*" under the following circumstances:

> The EEOC . . . invited Geo to conciliate
> [various sex discrimination claims] in [its]
> Reasonable Cause Determinations.
> Additionally, the EEOC . . . conveyed a

---

[3] While an employer may refuse an offer made by the EEOC on this or any other basis, the EEOC, for reasons already explained, is not required to disclose the facts underlying its reasonable cause determination during conciliation discussions.

conciliation letter to Geo that outlined a
proposal to settle Alice Hancock's charge of
discrimination and the claims of other
aggrieved employees of Geo.  The letter
proposed damages for Ms. Hancock, a class
fund for unidentified class members, and
injunctive relief.

Plaintiffs and Geo [discussed the claims at]
a joint conciliation session.  During the
conciliation session, Geo made a
counteroffer as to [one Charging Party] but
did not make a counteroffer as to [the
class-based demand]. Geo asked Plaintiffs to
identify the unidentified class members but
they declined to do so. Geo also proposed a
separate settlement with the EEOC . . .
which [was] rejected. Ultimately the
conciliation was unsuccessful.

816 F.3d at 1196.  Here, as in *Geo Group*, the evidence indicates

that 1) the EEOC invited the employer to conciliate through a

Determination Letter; 2) the EEOC and the employer discussed the

reasonable cause determination; and 3) the EEOC offered to

settle the charge of discrimination by proposing a settlement

involving monetary damages.  *See id.* at 1196.  *Mach Mining* and

*Geo Group* do not require more.

Defendants insist that their evidence still tends to

show a lack of conciliation, because, in their view, a monetary

settlement offer cannot qualify as a remediation opportunity.

*See* 18-1, PageID #s 81-82 (arguing that the "purpose of the

conciliation process is to effect voluntary compliance, not to

extract a monetary settlement from the employer").  Defendants

forget that "voluntary" compliance does not mean "free"

29

compliance.  A monetary settlement is, indisputably, a
permissible way to "remedy [an] alleged discriminatory
practice."  *See Mach Mining*, 135 S. Ct. at 1656; *see also, e.g.*,
42 U.S.C. § 2000e-5(g)(1) (authorizing "back pay" in response to
an "unlawful employment practice").  Both *Mach Mining* and *Geo
Group* observed, without concern, that the EEOC might make a
"monetary request" during conciliation discussions.  *Mach
Mining*, 135 S. Ct. at 1654; *Geo Grp.*, 816 F.3d at 1199.

　　　An employer's distaste for a financial settlement is
not, in any event, subject to judicial review.  As the Supreme
Court explained, Title VII "grant[s] the EEOC discretion over
the pace and duration of conciliation efforts, the plasticity
and firmness of its negotiating positions, *and the content of
its demands for relief*."  *Mach Mining*, 135 S. Ct. at 1655
(emphasis added).  "For a court to assess any of those choices
. . . is not to enforce the law Congress wrote, but to impose
extra procedural requirements."  *Id.*

　　　Defendants' money-isn't-conciliation argument suffers
from another serious defect.  Reviewing whether the EEOC did, in
fact, demand a financial counteroffer from Defendants requires
an inquiry into what the Supreme Court has forbidden: "what
happened (*i.e.*, statements made or positions taken) during
[conciliation] discussions."  *See id.* at 1656.  If this court
accepted such an argument, conciliation review could no longer

30

occur "consistent with [Title VII's] non-disclosure provision."
*See id.* The EEOC would, in certain cases, be forced into a
Hobson's choice: either violate its nondisclosure obligation, or
allow a potentially untrue allegation to stand unchallenged.
*See* 42 U.S.C. § 2000e-5(b) ("*Nothing* said or done during and as
part of such informal [conciliation] may be made public by the
Commission." (emphasis added)); *see also Mach Mining*, 135 S. Ct.
at 1655 n.2 (explaining that employer waivers cannot always
solve the problem, because the EEOC must still obtain a waiver
from the charging employee). To avoid a conundrum of this
nature, this court declines to accept Defendants' argument,
which turns on the nature of the EEOC's conciliation demands.

Defendants alternatively argue that they "were not
allowed the opportunity to remedy the alleged discrimination"
because the EEOC did not give them "any information as to what,
specifically, Defendants did wrong." ECF 18, PageID # 82. This
argument, to the extent that it is not contradicted by the
evidence, is simply a reprisal of Defendants' claim that the
EEOC was required to give them "the factual basis" behind the
reasonable cause determination. Defendants' assertion, as this
court has already explained, conflicts with *Mach Mining*'s narrow
view of the EEOC's conciliation obligations.

Defendants also argue that they are entitled to a stay
because the EEOC failed to "submit an affidavit" indicating that

it met its conciliation obligations.  ECF 21, PageID # 146

(citing *Mach Mining*, 135 S. Ct. at 1656).  Defendants are

mistaken in reading such a requirement into *Mach Mining*; they

transform a (usually) sufficient condition into a necessary one.

*Mach Mining* said: "A sworn affidavit from the EEOC stating that

it has performed the obligations noted above but that its

efforts have failed *will usually suffice* to show that it has met

the conciliation requirement."  135 S. Ct. at 1656 (emphasis

added)).  The opinion nowhere states that such an affidavit is

*required*, especially when, as here, ample other evidence

indicates that the EEOC conciliated.  Additionally, requiring

the EEOC to aver what is already evidenced, on pain of a stay,

would eviscerate the typical requirement that "[t]he proponent

of a stay bears the burden of establishing its need."  *Clinton*

*v. Jones*, 520 U.S. 681, 708 (1997) (citing *Landis v. N. Am. Co.*,

299 U.S. 248, 255 (1936)).

        In sum, a stay is not warranted because Defendants did

not produce "credible evidence . . . indicating that the EEOC

did not" conciliate.  *See Mach Mining*, 135 S. Ct. at 1656.  And

even if the burden of proof or production at this stage in the

proceedings were allocated to the EEOC, the Commission properly

relied on both the Determination Letter and what "Defendants'

own documents reveal," which is that the EEOC *did* conciliate.

*See* ECF 20, PageID #s 123-24.  The EEOC's reliance in part on

Defendants' letters and affidavits is consistent with *Mach Mining*'s warning that a reviewing court "needs more" than "bookend letters" to find in favor of the Commission. 135 S. Ct. at 1653 (quotation marks omitted). The court declines to issue a stay.

**V.     THE COURT DISMISSES THE COMPLAINT FOR FAILURE TO STATE A CLAIM.**

**A.     Standard Under Rule 12(b)(6).**

Defendants have also moved to dismiss the Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Dismissal under Rule 12(b)(6) may be based on either: (1) lack of a cognizable legal theory, or (2) insufficient facts under a cognizable legal theory. *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988) (citing *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 533–34 (9th Cir. 1984)). To survive a Rule 12(b)(6) motion to dismiss, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted); *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.").

The court takes all allegations of material fact as true, construes them in the light most favorable to the nonmoving party, and then evaluates whether the complaint "state[s] a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); *Syntex Corp. Sec. Litig.*, 95 F.3d 922, 926 (9th Cir. 1996). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Conclusory allegations of law, unwarranted deductions of fact, and unreasonable inferences are insufficient to defeat a motion to dismiss. *Sprewell*, 266 F.3d at 988; *Syntex Corp. Sec. Litig.*, 95 F.3d at 926.

The court's review is generally limited to the contents of the complaint. *Sprewell*, 266 F.3d at 988; *Campanelli v. Bockrath*, 100 F.3d 1476, 1479 (9th Cir. 1996). If matters outside the pleadings are considered, the Rule 12(b)(6) motion is treated as one for summary judgment. *See Keams v. Tempe Tech. Inst., Inc.*, 110 F.3d 44, 46 (9th Cir. 1997); *Anderson v. Angelone*, 86 F.3d 932, 934 (9th Cir. 1996). The court may "consider certain materials--documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice--without converting the motion to

dismiss into a motion for summary judgment." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

      **B.    The Complaint Fails to Allege Facts Tending to Show that Vicari is a Qualified Individual.**

      The ADA prohibits employers from discriminating against a job applicant because of his or her disability.  42 U.S.C. § 12112(a).  To establish a prima facie case of job discrimination, a plaintiff must typically show that "(1) he is a disabled person within the meaning of the statute; (2) he is a qualified individual with a disability; and (3) he suffered an adverse employment action because of his disability." *Hutton v. Elf Atochem N. Am., Inc.*, 273 F.3d 884, 891 (9th Cir. 2001); *see also Lambdin v. Marriott Resorts*, Civ. No. 14-00345 SOM/KSC, 2015 WL 263569, at *2 (D. Haw. Jan. 21, 2015) (Mollway, J.).  A qualified individual is "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8); *see also* 29 C.F.R. § 1630.2(m) (explaining that a qualified individual is one who has "the requisite skill, experience, education, and other job-related requirements of the employment position" he seeks).

      The necessary elements of an ADA claim can differ based on context, in part because a prime facie case "is an evidentiary standard, not a pleading requirement." *Lambdin*,

2015 WL 263569 at *2 n.1 (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002)). An ADA plaintiff is not strictly bound by the elements of the prima facie case, although "those elements are [still] a useful tool in assessing whether" a complaint "meets the requirement in Rule 8(a) of the Federal Rules of Civil Procedure." *Id.* In other words, while an ADA complaint "need not include any magical invocation of 'prima face case' language to satisfy Rule 8, . . . [it still] cannot leave [the] opponent and the court with no information at all about whether or how [the affected individual] falls under the ADA." *Id.* at *3.

The EEOC's Complaint asserts that Defendants violated the ADA by "failing to hire Charging Party based on his actual disability (hearing impairment) . . . [and] his perceived disability." *Id.* at PageID # 5. The Complaint contains only one factual paragraph bolstering this assertion:

> Charging Party applied for [a] detailer position with Defendants on June 24, 2015. Charging Party was interviewed on or about the same day by Defendants. During the interview, Defendants were informed that Charging Party is hearing impaired and can read lips. In response, Defendants stated they could not hire Charging Party because he was deaf and ended the interview. Consequently, Charging Party was not considered and/or hired for the detailer position and/or any other position with Defendants.

*Id.* at PageID # 6.

These spartan factual allegations, as Defendants point out, contain no facts tending to show that Vicari is a qualified individual under the ADA. *See* ECF 18-1, PageID # 85. The Complaint only alleges that Vicari, a "hearing impair[ed]" individual, was not hired as a "detailer." ECF 1, PageID #s 5-6. The court is left with no way to evaluate what the "job-related requirements of the [detailer] position" were or whether Vicari was capable of "perform[ing]" them. *See* 29 C.F.R. § 1630.2(m).

In *Lambdin*, this court had before it a complaint that was similarly "devoid of any allegation relating to whether [the plaintiff] is capable of performing the essential functions of [the] position." 2015 WL 263569 at *3. This court explained that "[t]he absence of allegations going to such basic matters weighs in favor of dismissal." *Id.* Other courts have engaged in a similar analysis. *See, e.g., Garcia v. Durham & Bates Agencies, Inc.*, No. 3:14-CV-00220-SI, 2014 WL 3746521, at *3 (D. Or. July 29, 2014) (dismissing an ADA claim in part because of the absence of allegations indicating that the plaintiff was a qualified individual); *Reyes v. Fircrest Sch.,* No. C11-0778JLR, 2012 WL 5878243, at *3 (W.D. Wash. Nov. 21, 2012) (same); *White v. Gordon*, No. CV 11-775-PHX-JAT, 2012 WL 2376464, at *3 (D. Ariz. June 22, 2012) (same); *Goodmon v. Big O Tires, Inc.*, No. 110CV0550 OWW DLB, 2010 WL 1416680, at *2 (E.D. Cal. Apr. 8,

2010) (same); *Rodriguez v. John Muir Med. Ctr.*, No. C 09-0731
CW, 2010 WL 1002641, at *3 (N.D. Cal. Mar. 18, 2010) (same).

      The EEOC asks this court to rule that the "failure to
adequately plead that a Charging Party is a qualified individual
*alone* is [not] sufficient to warrant the grant of a motion to
dismiss." ECF 20, PageID # 130 (emphasis). The EEOC argues
that to specifically require such allegations in an ADA
complaint is to "ignore that a prima facie case is an
evidentiary standard, like direct evidence." *Id.* at PageID
# 129.

      In support of its view that no allegation of
qualification is required, the EEOC points to *Bunch v. Lake*, No.
15 C 6603, 2016 WL 1011513 (N.D. Ill. Mar. 14, 2016), which
suggested that, as a matter of Seventh Circuit law, "all [an
ADA] plaintiff need allege is that he was turned down for a job
because of his disability." *Id.* at *4 (quoting *Dixon v. CMS*,
No. 14 C 4986, 2015 WL 6701771, at *2 (N.D. Ill. Nov. 3, 2015)).
The EEOC, in other words, seeks a bright line rule to the effect
that an ADA plaintiff need not ever plead facts tending to show
that he or she is a qualified individual.

      The court declines to adopt the EEOC's minimalist view
of its pleading obligations. The evidentiary nature of the
prima facie case standard does not mean that there are no
pleading obligations whatsoever related to the qualified

individual element.  To the extent that the EEOC reads *Bunch v. Lake* as suggesting otherwise, that case is not controlling.

As the Supreme Court explained in *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511-12 (2002), pleading obligations under the prima facie standard are relaxed only to the extent that a plaintiff would otherwise have "to plead more facts than he may ultimately need to prove to succeed on the merits."  *See also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (explaining that *Swierkiewicz* "did not change the law of pleading," but "simply re-emphasized" that a plaintiff need not allege facts "beyond those necessary to state his claim").

Under *Swierkiewicz*, if the context of a discrimination case renders proof of qualified individual status unnecessary to state a discrimination claim, the plaintiff no longer needs to plead facts related to that element.  *See* 534 U.S. at 511-12. But if the qualified individual element remains a necessary component of the claim--as in most ADA cases--the plaintiff must still plead some facts tending to prove that element.  *See, e.g.*, *Cohon ex rel. Bass v. New Mexico Dep't of Health*, 646 F.3d 717, 725 (10th Cir. 2011) ("To state a claim under [the ADA], the plaintiff must allege that . . . [s]he is a qualified individual with a disability . . . ." (second alteration in original) (quoting *Robertson v. Las Animas Cty. Sherrif's Dept.*, 500 F.3d 1185, 1193 (10th Cir. 2007)); *Fulton v. Goord*, 591 F.3d

37, 43 (2d Cir. 2009) ("To state a prima facie claim under []
the ADA . . . Fulton must allege . . . that [s]he is a
'qualified individual' with a disability . . . ." (second
alteration in original) (quoting *Hargrave v. Vermont*, 340 F.3d
27, 34-35 (2d. Cir. 2003)); *Toledo v. Sanchez*, 454 F.3d 24, 31
(1st Cir. 2006) ("To state a claim for a violation of [the ADA,]
a plaintiff must allege . . . that he is a qualified individual
with a disability . . . ."); *Kelley v. Corr. Corp. of Am.*, 750
F. Supp. 2d 1132, 1139 (E.D. Cal. 2010) ("Plaintiff's first
claim for relief alleges no facts at all to indicate whether
Plaintiff is a qualified individual or what the essential
elements of her job are or what the essential elements of an
alternative job might be.  For that reason Plaintiff's first
claim for relief will be dismissed with leave to amend."); *Palma
v. County of Stanislaus*, No. 1:17-CV-0819 AWI EPG, 2017 WL
6513282, at *5 (E.D. Cal. Dec. 20, 2017) ("In order to proceed
with this suit, the parties (and the Court) must be made aware
of . . . whether Plaintiff was indeed qualified to perform the
requisite tasks.  Because the Complaint does not do so, a
necessary element is not plausibly plead." (citation omitted));
*cf. Taylor v. Health*, 675 F. App'x 676, 677 (9th Cir. 2017)
(granting summary judgment because plaintiff "did not present
evidence that she could perform the essential functions of the
[] job without accommodation").

In this case, there is no indication that requiring
some allegation going to the qualified individual element would
be imposing a burden greater than the law requires. *Cf., e.g.*,
*Taylor*, 675 F. App'x at 678 (explaining that ADA plaintiffs
"need not prove that they are qualified individuals . . . in
order to bring claims challenging the scope of medical
examinations under the ADA" (quoting *Fredenburg v. Contra Costa
Cty. Dep't of Health*, 172 F.3d 1176, 1182 (9th Cir. 1999)).  At
the hearing on the present motion, the EEOC noted that it was
relying on direct evidence of disability discrimination.  But
even in a direct evidence case, an individual claimant must be a
qualified individual. *See, e.g.*, McCarthy v. Brennan, No. 15-
CV-03308-JSC, 2016 WL 946099, at *4 (N.D. Cal. Mar. 14, 2016)
(explaining that an allegation amounting to "direct evidence of
discrimination" speaks to the element of whether "the employer
treated [the plaintiff] differently because of his membership in
the protected class," not to the qualified individual element).
The EEOC's Complaint must allege *some* facts tending to show that
Vicari is a qualified individual.  Because it fails to do so, it
must be dismissed.

        The EEOC, taking a different tactic, has also asked
the court to take judicial notice that a "detailer position"
with Defendants "involves cleaning cars" and "does not require
specialized skills."  ECF 20, PageID # 131.  The court has no

basis on the present record for determining that this is a
"generally known" matter.  Fed. R. Evid. 201.  And even if the
court were to take judicial notice of this fact, the Complaint
has still failed to allege any facts regarding whether Vicari is
qualified for this position.  *See* ECF 1, PageID # 5.  The EEOC
is free to allege such facts in an Amended Complaint.

      The court dismisses the EEOC's Complaint with leave to
amend to correct any pleading defects.  In light of its
disposition, the court does not reach Defendants' alternative
argument that the Complaint is defective because it is "unclear
what specific subsection of 42 U.S.C. § 12112(b) Defendants
allegedly violated in the first instance."  ECF 18-1, PageID
# 84.

## VI.      CONCLUSION.

      The court DENIES Defendants' request for a stay and
GRANTS Defendants' motion to dismiss.  No later than February
14, 2018, the EEOC may file an Amended Complaint addressing the
deficiencies noted in the present order.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, January 24, 2018.



/s/ Susan Oki Mollway

Susan Oki Mollway
United States District Judge

U.S. Equal Employment Opportunity Commission v. MJC, Inc. et al., Civ. No. 17-00371 SOM-RLP; ORDER DENYING DEFENDANTS' MOTION TO STAY PLAINTIFF'S COMPLAINT FOR FAILURE TO SATISFY 42 U.S.C. § 2000e-5, AND GRANTING DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM.