IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>MJC, INC.; GAC AUTO GROUP, INC. dba CUTTER MAZDA OF HONOLULU; and DOES 1-10 INCLUSIVE,<br><br>　　　　Defendants. | Civ. No. 17-00371 SOM-WRP<br><br>ORDER GRANTING PLAINTIFF'S MOTION TO PRECLUDE DAVID FRAM FROM TESTIFYING AND OFFERING EXPERT OPINION |

**ORDER GRANTING PLAINTIFF'S MOTION TO PRECLUDE DAVID FRAM FROM TESTIFYING AND OFFERING EXPERT OPINION**

**I.　　　INTRODUCTION.**

Plaintiff U.S. Equal Employment Opportunity Commission ("EEOC") seeks to bar an opinion and testimony by David Fram, an expert offered by Defendants MJC, Inc. and GAC Auto Group, Inc. dba Cutter Mazda of Honolulu (collectively, "Defendants"). ECF No. 120. In this employment discrimination case, Fram proposes to opine on whether Defendants complied with the Americans with Disabilities Act ("ADA"). The court grants the motion, concluding that Fram's opinion and testimony go to legal issues, have not been shown to be reliable and relevant, and go to Defendants' intent.

**II.　　　BACKGROUND.**

The EEOC is suing Defendants under the ADA for allegedly refusing to hire Ryan Vicari on the basis of his

hearing disability.  ECF No. 27.  The EEOC seeks, among other things, "punitive damages for [Defendants'] malicious and/or reckless conduct."  *Id.*, PageID # 223.

On April 12, 2019, Defendants disclosed that they intended to call Fram as an expert witness at trial.  ECF No. 120-2, PageID # 1729.  Attached to this disclosure was Fram's report dated April 11, 2019.  *See id.* at 1731-34.

The report explains that, from 1991 to 1996, Fram was a Policy Attorney for the EEOC in Washington, D.C., where he "supervised and consulted with EEOC investigators and EEOC attorneys during the investigation and resolution of all forms of discrimination complaints, including ADA complaints."  *Id.* at 1731.  Since 1996, Fram has been the Director of ADA Services for the National Employment Law Institute, a nonprofit educational organization focused on employment law issues.  *Id.*  Fram states that he has "spoken extensively around the country concerning ADA issues" and has "trained tens of thousands of HR professionals, attorneys, and others."  *Id.* at 1732.

Fram was retained to opine on "whether Cutter Mazda of Honolulu's treatment of Ryan Vicari during his interview for employment with Cutter was consistent with the industry training I provide on what is required during an interview of a job applicant in order to comply with the ADA standard of care."  *Id.*  The report explains, "This is relevant because [the EEOC]

has alleged that the employer's conduct fell below the standard of care and was 'malicious' and/or 'reckless.'" *Id.* Fram states that he reviewed briefing, deposition excerpts, and "EEOC regulations, and formal and informal guidance regarding the ADA, as well as federal Court of Appeals cases and U.S. Supreme Court cases on the ADA." *Id.*

> The report summarizes Fram's opinion as follows:
>
> <u>Employers are Permitted, But Not Required, to Ask Applicants to Describe/Demonstrate Performance When a Known Disability Would Reasonably Interfere with a Job.</u>
>
> In the EEOC Preemployment Enforcement Guidance, which I wrote when I was employed by the EEOC's Office of Legal Counsel, the Commission stated that an "employer may ask applicants to describe how they would perform any or all job functions, as long as all applicants in the job category are asked to do this." The Commission went one step further, allowing for certain disparate treatment in limited circumstances. In this regard, the Commission stated that, "[w]hen an employer could reasonably believe that an applicant will not be able to perform a job function because of a known disability, the employer may ask that particular applicant to describe or demonstrate how s/he would perform the function. An applicant's disability would be a 'known disability' either because it is obvious (for example, the applicant uses a wheelchair), or because the applicant has voluntarily disclosed that s/he has a hidden disability." The Commission specifically allowed employers to engage in this disparate treatment in response to employers' concerns that requiring only particular applicants to describe/demonstrate would be illegal under the ADA. Importantly, although the

> Commission allowed for this disparate
> treatment, it did not require it.
>
> I train employers, employees, and their
> respective representatives on what I believe
> are the ADA's "legal" requirements and also
> what I believe to be "best practices." On
> issues like those raised in this case, I
> would train employers that there is no legal
> obligation to make further inquiries during
> an interview if an applicant discloses a
> hidden disability that the employer
> reasonably believes would interfere with
> safe performance of job functions.
> Likewise, I would train an applicant that
> there is no legal obligation to explain
> to the employer how s/he could safely
> perform the job if the employer raises
> safety concerns.
>
> From a "best practices" perspective, I would
> train employers that, when an applicant
> discloses such a disability, I believe it is
> a best practice to ask the applicant to
> describe how s/he would safely perform the
> job. I would also train an applicant that,
> in circumstances where an employer has
> raised safety concerns, the applicant
> should, as a best practice, proactively
> explain to the employer how s/he could
> safely perform the job.
>
> In this case, it appears that neither party
> engaged in what I train to be the best
> practices. However, neither party engaged
> in conduct that falls below the ADA standard
> of care according to my training in regard[]
> to the legal obligations of applicants and
> employers and, moreover, would not be
> conduct that is "malicious" or "reckless."

*Id.* at 1733.

### III. STANDARD OF REVIEW.

The party submitting opinions of an expert has the burden of demonstrating the admissibility of those opinions.

*Lust By & Through Lust v. Merrell Dow Pharms.*, Inc., 89 F.3d 594, 598 (9th Cir. 1996) ("It is the proponent of the expert who has the burden of proving admissibility.").

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert testimony and states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> > (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> >
> > (b) the testimony is based on sufficient facts or data;
> >
> > (c) the testimony is the product of reliable principles and methods; and
> >
> > (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702; *see also Clausen v. M/V New Carissa*, 339 F.3d 1049, 1055 (9th Cir. 2003).

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, the Supreme Court, focusing on the admissibility of scientific expert testimony, found that such testimony is admissible only if it is both relevant and reliable. *See* 509 U.S. 579, 589 (1993). In *Kumho Tire Co. v. Carmichael*, the Court explained that the presiding judge's role (or gatekeeping function) in ensuring the reliability and relevancy of expert testimony

extends to all expert testimony.  *See* 526 U.S. 137, 146 (1999); *see also Clausen*, 339 F.3d at 1056 (noting that district courts are "charged . . . with the responsibility of ensuring that proffered [expert] evidence is both relevant and reliable").

*Daubert* outlined nonexclusive factors, such as testing, peer review and publication, error rates, and acceptance in the relevant scientific community, some or all of which might help a court to determine the reliability of a particular scientific theory or technique.  *See* 509 U.S. at 593–94.  The *Daubert* test is "flexible," and the "list of specific factors neither necessarily nor exclusively applies to all experts or in every case."  *Kumho*, 526 U.S. at 141.  "Rather, the law grants a district court the same broad latitude when it decides how to determine reliability as it enjoys in respect to its ultimate reliability determination."  *Id.; see also Living Designs, Inc. v. E.I. Dupont de Nemours & Co.*, 431 F.3d 353, 369 (9th Cir. 2005) (noting that the inquiry envisioned by Rule 702 is a flexible one that must be tied to the facts of each particular case).

"[T]he test under *Daubert* is not the correctness of the expert's conclusions but the soundness of his methodology." *Primiano v. Cook*, 598 F.3d 558, 564-65 (9th Cir. 2010), *as amended* (Apr. 27, 2010).  "Under *Daubert*, the district judge is a gatekeeper, not a fact finder.  When an expert meets the

6

threshold established by Rule 702 as explained in *Daubert*, the expert may testify and the jury decides how much weight to give that testimony." *Id.* (quotation marks and citation omitted).

"A trial court not only has broad latitude in determining whether an expert's testimony is reliable, but also in deciding how to determine the testimony's reliability." *Avila v. Willits Envtl. Remediation Tr.*, 633 F.3d 828, 834 (9th Cir. 2011) (quoting *Elsayed Mukhtar v. Cal. State Univ., Hayward*, 299 F.3d 1053, 1063 (9th Cir. 2002), *overruled on other grounds by Estate of Barabin v. AstenJohnson, Inc.*, 740 F.3d 457 (9th Cir. 2014)).

## IV. ANALYSIS.

Defendants have not met their burden of proving the admissibility of Fram's expert opinion. The court therefore grants the EEOC's motion.

### A. Fram Offers Legal Opinions.

"[A]n expert witness cannot give an opinion as to her *legal conclusion, i.e.,* an opinion on an ultimate issue of law." *Mukhtar*, 299 F.3d at 1065 n.10 (citations omitted); *see also United States v. Scholl*, 166 F.3d 964, 973 (9th Cir. 1999) (excluding testimony calling for a legal conclusion); *Aguilar v. Int'l Longshoremen's Union Local No. 10*, 966 F.2d 443, 447 (9th Cir. 1999) (stating that "matters of law for the court's determination" are "inappropriate subjects for expert

7

testimony"). Thus, "while an expert witness generally may give opinion testimony that embraces an ultimate issue to be decided by the trier of fact, that expert may not express a legal opinion as to the ultimate legal issue." *Wiles v. Dep't of Educ.*, Civ. Nos. 04-00442 ACK-BMK, 05-00247 ACK-BMK, 2008 WL 4225846, at *1 (D. Haw. Sept. 11, 2008). "Courts have held that expert witnesses' use of 'judicially defined terms,' 'terms that derived their definitions from judicial interpretations,' and 'legally specialized terms' would constitute expression of opinion as to the ultimate legal conclusion." *Id.* (quoting *United States v. Duncan*, 42 F.3d 97, 101-02 (2d Cir. 1994) (cited approvingly in *Mukhtar*, 299 F.3d at 1066)).

The ultimate legal issues in this case include determinations of whether Defendants violated the ADA and whether their conduct was malicious and/or reckless. Fram's testimony goes to these exact issues.

Based on his review of the Complaint, deposition excerpts, EEOC regulations, and case law, Fram offers his opinion that "neither party engaged in conduct that falls below the ADA standard of care according to my training in regard[] to the legal obligations of applicants and employers." ECF No. 120-2, PageID # 1733. He explains that this "ADA standard of

care"[1] is based on "what I believe are the ADA's 'legal' requirements and also what I believe to be 'best practices.'" *Id.* Fram proposes to give his interpretation of ADA requirements and to opine on whether Defendants violated them. *See Coelho v. Life Ins. Co. of N. Am.*, Civ. No. 08-00569 HG-BMK, 2010 WL 11610356, at *2 (D. Haw. Apr. 6. 2010) (excluding expert testimony going to "legal interpretations of an insurance policy").

Fram further concludes that Defendants' conduct "would not be conduct that is 'malicious' or 'reckless.'" ECF No. 120-2, PageID # 1733. In other words, he applies judicially defined terms to the facts of the case, effectively determining whether the EEOC is entitled to punitive damages. *See Wiles*, 2008 WL 4225846, at *1 (explaining that "Plaintiffs' experts may not couch their opinions in terms of whether or not Defendant engaged in 'deliberate indifference'" because that term is "a judicially defined and/or legally specialized term"). In his deposition, Fram explained that "if [Defendants' conduct is] consistent with how I train employers in this industry, or in

---

[1] In his deposition, Fram clarified that the industry standard of care is the ADA:

> Q. And just to be clear, Mr. Fram, the industry standard of care is the ADA; is that correct?
>
> A. Yes.

ECF No. 120-3, PageID # 1793.

9

any employment industry, then it can't be malicious or recklessly indifferent." ECF No. 120-3, PageID # 1740; *see also id.* at 1750 (agreeing that whether the EEOC shows malice or reckless indifference on Defendants' part is "a legal issue"). This constitutes a legal conclusion (and one without any basis in law).

Defendants argue that Fram "opines on the very limited question of whether Guy Tsurumaki had an obligation to make further inquiries of Ryan Vicari upon learning that Mr. Vicari is deaf, including inquiries regarding Mr. Vicari's ability to perform job functions." ECF No. 135, PageID # 2400. Defendants' characterization of Fram's testimony neglects to mention his opinion on whether Defendants met the "ADA standard of care" (i.e., Fram's interpretation of what the ADA requires) and whether Defendants' conduct was malicious or reckless. Moreover, any "obligation" that Tsurumaki did or did not have during his interview with Vicari would be a legal obligation based on the ADA.

Defendants further argue that Fram's opinion is akin to testimony by "human resources experts" that courts have allowed. ECF No. 135, PageID # 2395 (quoting *Maharaj v. Cal. Bank & Tr.*, 288 F.R.D. 458, 460 (E.D. Cal. 2013) ("In particular, courts commonly permit human resources experts to testify on human resources management policies and practices and

whether an employer deviated from those policies and practices."). Defendants assert that they "are allowed to rely on expert testimony regarding the issue of whether Defendants acted according to the standards relied upon by Mr. Fram in his training." *Id.* The court disagrees. The standards relied on in Fram's training are not "industry standards" but standards based on his interpretation of what the ADA requires. Whether Defendants deviated from what the ADA requires is the central issue in this case.

Fram offers legal conclusions, which are inadmissible.

**B. Defendants Have Not Shown That Fram's Opinion Is Reliable.**

In assessing reliability, "[t]he question is whether an expert's methodology can be 'challenged in some objective sense, or whether it is instead simply a subjective, conclusory approach that cannot reasonably be assessed for reliability.'" *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1046 (9th Cir. 2014) (quoting Fed. R. Evid. 702 Advisory Committee's Note to 2000 Amendments). Expert testimony may not be based on "subjective belief or unsupported speculation." *Daubert*, 509 U.S. at 590.

Fram's opinion is based on his experience as an EEOC attorney over 20 years ago, his belief of what the ADA requires, and the training he developed based on that experience and belief. *See* ECF No. 120-2, PageID # 1733 ("I train employers,

employees, and their respective representatives on what I believe are the ADA's 'legal' requirements and also what I believe to be 'best practices.'"). Further, in his deposition, Fram explained that his "best practices" are based on common sense and human experience:

> Q. So there is no objective guidance for applicants in that situation that you have developed to tell them how they can proactively explain how to safely perform the job?
>
> A. No. This is just a matter of being a human being and common sense. This is just talking it through. There is not a legal standard that triggers the individual's obligation and what he or she has to say.
>
> Q. Right. This is all your best practices?
>
> A. Yes.
>
> . . . .
>
> A. . . . . I don't think it's that complicated because really what I am talking about is being a human being and communicating. So that's really what my best practices come down to is communicating what your needs are, communicating what your concerns are. It's communication that we just learn in life. So it's not that there is any magic best practices that somebody has to be trained on.

ECF No. 120-3, PageID #s 1783-86.

The EEOC argues that "Mr. Fram's self-published training has never been peer reviewed, approved or endorsed by any court of the EEOC, and lacks general recognition and

12

acceptance as a standard of practice." ECF No. 120, PageID #s 1718-19. Defendants do not respond by showing that Fram's opinion is based on something more than his subjective belief. Instead, Defendants argue that Fram's testimony is reliable because "Mr. Fram's report--in addition to his CV--demonstrate his breadth of knowledge and experience regarding how he trains employers to comply with the ADA." However, as explained above, Fram's opinion as to how to comply with the ADA constitutes impermissible legal conclusions.

Fram's opinion is excluded because Defendants do not show that it is reliable.

### C. Defendants Have Not Shown That Fram's Opinion Is Relevant.

"The requirement [in Rule 702 of the Federal Rules of Evidence] that the opinion testimony 'assist the trier of fact' 'goes primarily to relevance.'" *Primiano*, 598 F.3d at 564 (quoting *Daubert*, 509 U.S. at 591). "To be admissible, 'expert testimony must . . . address an issue beyond the common knowledge of the average layman.'" *Mukhtar*, 299 F.3d at 1065 n.9 (quoting *United States v. Vallejo*, 237 F.3d 1008, 1019 (9th Cir. 2001), *amended by* 246 F.3d 1150 (9th Cir. 2001).

Fram's opinion would likely confuse or mislead the jury. In addition to constituting legal conclusions, his opinion discusses the ADA training that he offers, as well as his "best practices." At the hearing on this motion,

Defendants' counsel argued that Fram's opinion would help the jury determine whether Defendants' equal employment training program was satisfactory. However, Fram did not train Defendants or anyone else involved in this case. Further, Fram's training is based on his experience and beliefs, not on an accepted industry standard. Fram stated in his deposition that his best practices are based at least in part on common sense and the human experience, which is not "beyond the common knowledge of the average layman."

Defendants fail to show that Fram's opinion will assist the trier of fact and therefore be relevant.

### D. Fram's Opinion Goes to Defendants' Intent.

Experts may not offer opinions regarding a defendant's "intent, motive, or state of mind" because "[s]uch opinions invade the province of the trier of fact." *Sec. & Exch. Comm. v. Jensen*, No. CV 11-5316-R, 2013 WL 12216855, at *1 (C.D. Cal. Jan. 9, 2013); *see also Siring v. Or. State. Bd. Of Higher Educ. ex rel. E. Ore. Univ.*, No. 3:11-cv-1407-SI, 927 F. Supp. 2d 1069, 1077 (D. Or. 2013) ("Courts routinely exclude as impermissible expert testimony as to intent, motive, or state of mind." (collecting cases)).

Fram's opinion provides that Defendants' conduct "would not be conduct that is 'malicious' or 'reckless.'" ECF No. 120-2, PageID # 1733. Whether Defendants acted with malice

14

or recklessness for the purpose of awarding punitive damages is a question going to Defendants' state of mind or intent. *See Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 535 (1999) ("The terms 'malice' and 'reckless' ultimately focus on the actor's state of mind."); *EEOC v. Scolari Warehouse Markets, Inc.*, 488 F. Supp. 2d 1117, 1139 (D. Nev. 2007) ("Punitive damages may be awarded if the EEOC can demonstrate that Defendant engaged in a discriminatory practice with malice or reckless indifference to its employees' rights." (citing 42 U.S.C. § 1981a(b)(1); *Kolstad*, 527 U.S. at 535-36)).

Defendants argue that Fram's opinion should be admitted because, as stated in his deposition, Fram was not asked to give an opinion on what "maliciousness" or "reckless indifference" means:

> Q. And how is malicious and/or reckless conduct connected to punitive damages? What's your understanding about that?
>
> A. My understanding is that you would have to show--meet that standard in order to get punitive damages.
>
> Q. You would have to show that the employer acted either with maliciousness or reckless indifference, correct?
>
> A. That's my understanding. And I haven't been asked to give an opinion on what that means, so that is my understanding.
>
> Q. Oh, you haven't been asked to give an opinion about what maliciousness means?
>
> A. Or reckless indifference.

15

> Q. Okay. Do you have an understanding about what those terms mean?
>
> A. I do not.

ECF No. 120-3, PageID #s 1741-42. Even if he was not asked to opine on his understanding of those terms, Fram was asked to provide his opinion on whether "the employer's conduct fell below the standard of care and was 'malicious' and/or 'reckless.'" ECF No. 120-2, PageID # 1732.

Fram's opinion is excluded as offering an opinion on Defendants' intent.

**V.     CONCLUSION.**

The EEOC's motion to preclude Fram's expert opinion and testimony is granted.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, July 9, 2019.



/s/ Susan Oki Mollway

Susan Oki Mollway
United States District Judge

U.S. Equal Employment Opportunity Commission v. MJC, Inc. et al., Civ. No. 17-00371 SOM-WRP; ORDER GRANTING PLAINTIFF'S MOTION TO PRECLUDE DAVID FRAM FROM TESTIFYING AND OFFERING EXPERT OPINION.