IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, ) ) ) Plaintiff, ) ) vs. ) ) MJC, INC.; GAC AUTO GROUP, ) INC. dba CUTTER MAZDA OF ) HONOLULU; and DOES 1-10 ) INCLUSIVE, ) ) Defendants. ) _____ ) | Civ. No. 17-00371 SOM-WRP ORDER (1) GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND (2) DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |

**ORDER (1) GRANTING IN PART AND DENYING IN PART
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND (2) DENYING
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

I.      INTRODUCTION.

        Ryan Vicari, who is deaf, applied for a detailer

position at Defendant GAC Auto Group, Inc. dba Cutter Mazda of

Honolulu ("Cutter Mazda").  Cutter Mazda's Assistant Service

Manager, Guy Tsurumaki, interviewed Vicari but did not hire him,

citing safety concerns relating to his deafness.  Plaintiff

Equal Employment Opportunity Commission ("EEOC") filed suit on

Vicari's behalf, complaining that Cutter Mazda and the owner of

Cutter Mazda, Defendant MJC, Inc. (collectively, "Defendants"),

had violated the Americans with Disabilities Act ("ADA") by

refusing to hire Vicari because he was deaf.

        Before the court are competing motions for summary

judgment filed by the EEOC and Defendants.  ECF Nos. 91, 93.

The EEOC argues that the court should grant summary judgment in its favor with respect to its ADA claims and four of Defendants' defenses. Defendants argue that summary judgment should be granted in its favor because no detailer position was available at the time of Vicari's job interview and because Tsurumaki is not a "supervisor" for purposes of imputing liability to Defendants. Defendants also request that the case be stayed because the EEOC allegedly failed to notify Defendants during conciliation that Vicari has a cochlear implant.

Concluding that several factual disputes remain for trial, the court does not grant either summary judgment motion in full. However, the court grants the EEOC's motion to the extent it challenges the defenses that Vicari posed a direct threat to the health and safety of himself and others, that the EEOC's claims are barred by the applicable statute of limitations, and that the EEOC failed to exhaust administrative remedies before filing suit. Finally, the court denies Defendants' request for a stay; Defendants fail to demonstrate that the EEOC's conciliation efforts were legally deficient.

## II.      BACKGROUND.

### A.   Factual Background.

Vicari has been deaf since he was very young. ECF No. 94-2, PageID # 1168. On June 24, 2015, he submitted a job application at the Cutter Mazda car dealership. ECF No. 94-3.

In the portion of the application labeled "Position for which you are applying," Vicari wrote "Detailing." *See id.*, PageID # 1175.

That day, Guy Tsurumaki, Assistant Service Manager at Cutter Mazda, interviewed Vicari in his office. Vicari was accompanied by his grandmother, Patricia Vicari ("Patricia"). ECF No. 94-5, PageID #s 1197, 1226. Conducting initial interviews of applicants and making hiring recommendations to the Service Manager were part of Tsurumaki's job. The Service Manager usually adopted his recommendations. *Id.* at 1198-1201.

The interview of Vicari lasted between five and ten minutes. ECF No. 94-5, PageID # 1225; ECF No. 94-2, PageID # 1170. Tsurumaki noted that Vicari was applying for a detailer position. ECF No. 94-5, PageID # 1226. Tsurumaki contends that he told Vicari and Patricia that Cutter Mazda did not have any detailer position open, but that there was a lot attendant position open. ECF No. 94-5, PageID #s 1226-27. Vicari has a different recollection; he says he was never told that he was being interviewed for a lot attendant position. ECF No. 131-13, PageID # 2094. Patricia recalls that Tsurumaki discussed "detailing" with Vicari. ECF No. 131-8, PageID #s 2030, 2035.

During the interview, Patricia told Tsurumaki that Vicari was deaf but could read lips. ECF No. 94-5, PageID # 1227. Tsurumaki then told Patricia and Vicari that the

movement of cars around the lot could be unsafe for Vicari. *Id*. at 1231-33. Tsurumaki suggested that Vicari consider a position outside of the car dealership industry given the potential safety concerns. *Id*. at 1231-33. According to Vicari and Patricia, Patricia told Tsurumaki that Vicari wears a cochlear implant, and Vicari showed Tsurumaki the implant. ECF No. 131-8, PageID #s 2032-35; ECF No. 94-4, PageID # 1187. Tsurumaki says he was not told about the cochlear implant, although he was told that Vicari had a driver's license and could drive. ECF No. 94-5, PageID # 1225.

The interview ended without Tsurumaki's determining whether Vicari qualified for the lot attendant position. ECF No. 94-5, PageID #s 1233-35; ECF No. 94-2, PageID # 1171. Tsurumaki did not discuss Vicari's interview with Cutter Mazda's Service Manager, Alan Edwards, or with MJC Inc.'s Human Resources Manager, Kaylene Remata. ECF No. 92-6, PageID #s 985-86; ECF No. 92-20, PageID #s 1087-88.

The detailer job description states that detailers are responsible for cleaning and preparing the interior and exterior of new and used vehicles for sale. ECF No. 94-9, PageID # 1266. Tsurumaki explained that detailers wash, vacuum, and wax cars, and drive cars around within the lot. ECF No. 94-5, PageID #s 1204-05. Jefferson Lucio, a former detailer at Cutter Mazda, stated that detailers are trained, their duties require

4

primarily physical manpower, and the only machinery that they use is a vacuum cleaner.  ECF No. 94-10, PageID #s 1269-71.

Lot attendants are divided into three shifts: openers, main shuttles, and closers.  ECF No. 94-12; ECF No. 94-5, PageID #s 1206-07.  An opener is responsible for opening the gates, cleaning the service areas, taking out the trash, and driving vehicles to an area designated for service cars.  ECF No. 94-5, PageID # 1208; ECF No. 94-12, PageID # 1276.  A main shuttle drives a shuttle that takes customers to and from their jobs throughout the day, makes sure that the shuttles are clean, and keeps the shuttles filled with gas.  ECF No. 94-5, PageID #s 1210-12; ECF No. 94-12, PageID # 1277.  A closer locks the cars and the gates, ensures that keys are safely stored, empties rubbish, washes and cleans vehicles, and moves vehicles within the lot.  ECF No. 94-5, PageID #s 1213-15.

Lot attendants primarily communicate with each other and other workers at the dealership by two-way radio.  ECF No. 133-4, PageID # 2254.  For example, lot attendants use the two-way radio to communicate regarding customer pickups.  ECF No. 133-4, PageID # 2256; ECF No. 133-6, PageID #s 2295-98.  The job descriptions for the opener and main shuttle mention the use of a two-way radio.  ECF No. 94-12, PageID #s 1276-77.  The job descriptions of all lot attendant shifts, including the closer, state that lot attendants are responsible for "return[ing] [two-

way] radio[s] onto [the] charging station." *Id.* at 1276-78.
Lot attendants also communicate in person, by cell phone, and by
car horn. ECF No. 94-5, PageID # 1218.

Vicari is unable to use a two-way radio. ECF No. 133-
15, PageID # 2335 ("A radio is something I can't talk on and
hear."). He often communicates via text messaging. *Id.*

At the time of Vicari's interview, Defendants had an
anti-discrimination policy. ECF No. 92-20, PageID #s 1063-64,
1090-91. Defendants were providing annual training on
harassment and discrimination to all employees. ECF No. 92-20,
PageID #s 1066-69. The most recent harassment and
discrimination training before Vicari's interview was in October
2014. Tsurumaki attended that. ECF No. 92-6, PageID # 989; ECF
No. 92-20, PageID # 1074.

Tsurumaki's typical interview process involved going
over in detail a job description with an applicant and asking
the applicant if he or she can perform the duties listed in the
job description. ECF No. 94-5, PageID # 1202. Tsurumaki did
not go through the lot attendant job description with Vicari,
have Vicari drive around the lot, or have Vicari test the two-
way radio. *Id.* at 1236-37; ECF No. 94-6, PageID # 1252.

Tsurumaki told Vicari that his application would be
kept on file. ECF No. 94-6, PageID # 1251 (Defendants'
responses to the EEOC's requests for admissions). Cutter Mazda

had at least one detailer position available between July 14, 2015, and August 3, 2015. *Id.* at 1252. Defendants did not inform Vicari that a detailer position was available during this time. *Id.* at 1253. Cutter Mazda hired two individuals for detailer positions that were available on August 3, 2015. Neither individual had a hearing impairment. *Id.* at 1252.[1]

Vicari later applied for and got a janitor/custodian position with Network Enterprises, Inc. The responsibilities of the janitor/custodian position include cleaning and supplying buildings, as well as driving company vehicles to work sites. ECF No. 94-11, PageID # 1275. Vicari passed a pre-employment physical exam and was found capable of performing the work required for that position. ECF No. 94-8, PageID # 1258.

**B. Procedural Background.**

On August 4, 2015, Vicari submitted to the EEOC a Charge of Discrimination against Cutter Mazda ("Charge"), stating:

> I. On June 24, 2015, I applied for a position as Auto Detailer with Respondent. On that same day, I met with Assistant Manager, Guy Tsurumaki, who told me that I could not be hired because I am deaf. He

---

[1] Defendants admitted this in their responses to the EEOC's requests for admissions. In his deposition, however, Tsurumaki stated that one of these individuals was technically hired as a car washer, not a detailer, and said that "the only difference is how they get paid." ECF No. 133-4, PageID #s 2245-47. At the hearing on July 8, 2019, the EEOC also asserted that a car washer's responsibilities do not include driving.

> also told me that I would be a liability and
> that I should "look for another field."
>
> II. I was told that I was not hired because
> of my disability.
>
> III. I believe I have been discriminated
> against because of my disability, in
> violation of the Americans with Disabilities
> Act of 1990, as amended.

ECF No. 92-7. On August 31, 2015, Cutter Mazda responded to the

Charge with its Statement of Position, denying the allegations

of discrimination. ECF No. 92-8.

On May 26, 2017, the EEOC issued a letter of

determination ("Determination Letter"), which stated:

> After an examination of the evidence
> obtained in the Commission's investigation,
> . . . the Commission has determined that
> there is reasonable cause to believe that
> the Charging Party was denied hired because
> of a disability, as defined under the ADA.
>
> In like and related matters, the Commission
> determined Respondent failed to provide a
> reasonable accommodation to Charging Party
> because of a disability, as defined under
> the ADA. Further, the Commission found that
> Charging Party was denied hire based on a
> perceived disability.
>
> Therefore, I have concluded that the
> evidence is sufficient to establish a
> violation of the statute under the [ADA].

ECF No. 92-14, PageID #s 1019-20. The Determination Letter

invited Defendants and Vicari "to join with [the EEOC] in a

collective effort toward a just resolution of this matter," and

8

stated that an EEOC investigator would be contacting them shortly "to begin conciliation discussions." *Id.* at 1020.

On July 31, 2017, the EEOC filed a complaint alleging that Defendants had violated the ADA by failing to hire Vicari based on his actual and perceived hearing disability.  ECF No. 1.  On October 23, 2017, Defendants moved to stay the action, arguing that the EEOC had failed to engage in the requisite conciliation process under 42 U.S.C. § 2000e-5(b), and moved to dismiss the complaint for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  ECF Nos. 18, 18-1.

In an order filed on January 24, 2018, this court declined to stay the proceedings, concluding that Defendants had not put forth credible evidence indicating that the EEOC had failed to conciliate.  However, the court dismissed the complaint for failing to allege facts showing that Vicari is a "qualified individual" under the ADA.  ECF No. 26.  The EEOC filed a First Amended Complaint ("Complaint") on February 14, 2018.  ECF No. 27.

## III.    STANDARD OF REVIEW.

Summary judgment shall be granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Addisu v. Fred Meyer, Inc.*, 198 F.3d

1130, 1134 (9th Cir. 2000). The movant must support his or her position that a material fact is or is not genuinely disputed by either "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motion only), admissions, interrogatory answers, or other materials" or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c).

One of the principal purposes of summary judgment is to identify and dispose of factually unsupported claims and defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). Summary judgment must be granted against a party that fails to demonstrate facts to establish what will be an essential element at trial. *See id.* at 323. A moving party without the ultimate burden of persuasion at trial--usually, but not always, the defendant--has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

The burden initially falls on the moving party to identify for the court those "portions of the materials on file

that it believes demonstrate the absence of any genuine issue of
material fact." *T.W. Elec. Serv., Inc. v. Pac. Elec.
Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (citing
*Celotex Corp.*, 477 U.S. at 323). "When the moving party has
carried its burden under Rule 56(c), its opponent must do more
than simply show that there is some metaphysical doubt as to the
material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio
Corp.*, 475 U.S. 574, 586 (1986) (footnote omitted). The
nonmoving party must set forth specific facts showing that there
is a genuine issue for trial. *T.W. Elec. Serv.*, 809 F.2d at
630. "A scintilla of evidence or evidence that is merely
colorable or not significantly probative does not present a
genuine issue of material fact." *Addisu*, 198 F.3d at 1134.

All evidence and inferences must be construed in the
light most favorable to the nonmoving party. *T.W. Elec. Serv.*,
809 F.2d at 631. Inferences may be drawn from underlying facts
not in dispute, as well as from disputed facts that the judge is
required to resolve in favor of the nonmoving party. *Id.* When
"direct evidence" produced by the moving party conflicts with
"direct evidence" produced by the party opposing summary
judgment, "the judge must assume the truth of the evidence set
forth by the nonmoving party with respect to that fact." *Id.*

**IV.    ANALYSIS.**

The ADA prohibits certain employers from
"discriminat[ing] against a qualified individual on the basis of
disability in regard to job application procedures, the hiring,
advancement, or discharge of employees, employee compensation,
job training, and other terms, conditions, and privileges of
employment."  42 U.S.C. § 12112(a).

A plaintiff asserting disparate treatment under the
ADA may prove that claim at the summary judgment stage in two
ways.  First, the plaintiff may apply the burden-shifting
analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S.
792 (1973).  *See Raytheon Co. v. Hernandez*, 540 U.S. 44, 51–55
(2003) (applying the *McDonnell Douglas* burden-shifting framework
to a disparate treatment claim asserted under § 12112(a) of the
ADA).  Second, a plaintiff may prove disparate treatment by
producing direct or circumstantial evidence demonstrating that a
discriminatory reason more likely than not motivated the
employer.  *See Tsuji v. Kamehameha Sch.*, 154 F. Supp. 3d 964,
973 n.7 (D. Haw. 2015); *see also Surrell v. Cal. Water Serv.
Co.*, 518 F.3d 1097, 1105 (9th Cir. 2008).  The EEOC is
proceeding under the latter option, arguing that "there is
direct evidence that Defendants violated the ADA as they admit
they failed to hire Ryan Vicari due to his deafness."  ECF No.
93, PageID # 1135 (capitalizations omitted).

To establish a *prima facie* case of employment discrimination under the ADA, the EEOC must show that "(1) [Vicari] is a disabled person within the meaning of the statute; (2) he is a qualified individual with a disability; and (3) he suffered an adverse employment action because of his disability." *See Hutton v. Elf Atochem N. Am., Inc.*, 273 F.3d 884, 891 (9th Cir. 2001).

The court addresses each element below and concludes that several factual disputes remain for trial. As a result, neither party is entitled to summary judgment on the EEOC's ADA claims. However, the court grants summary judgment to the EEOC with respect to three defenses. Finally, the court denies Defendants' request to stay the case because Defendants have not demonstrated that the EEOC failed to satisfy its conciliation requirements.

### A. First Element: Disabled Person.

Under the ADA, the term "disability" is defined as:

(A) a physical or mental impairment that substantially limits one or more major life activities of such individual;

(B) a record of such an impairment; or

(C) being regarded as having such an impairment (as described in [42 U.S.C. § 12102(3)]).

42 U.S.C. § 12102(1).  The ability to hear is considered a
"major life activity" under subsection (A).  *See id.*
§ 12102(2)(A).

Vicari is deaf, and his deafness qualifies as a
physical impairment to his ability to hear.  *See* 29 C.F.R.
§ 1630.2(j)(3)(iii) ("[I]t should be easily concluded that the
following types of impairments will, at a minimum, substantially
limit the major life activities indicated: Deafness
substantially limits hearing[.]").  Defendants do not dispute
that Vicari is disabled for purposes of the ADA.

### B.   Second Element: Qualified Individual.

A qualified individual is "an individual who, with or
without reasonable accommodation, can perform the essential
functions of the employment position that such individual holds
or desires."  42 U.S.C. § 12111(8).  An individual is qualified
if he or she "satisfies the requisite skill, experience,
education, and other job-related requirements of the employment
position" he seeks.  29 C.F.R. § 1630.2(m).

"Essential functions" are "the fundamental job duties
of the employment position that the individual with a disability
holds or desires."  *Id.* § 1630.2(n)(1).  The term does not
include "the marginal functions of the position."  *Id.*  Job
functions may be considered essential for several reasons,
including the following:

> (i) The function may be essential because
> the reason the position exists is to perform
> that function;
>
> (ii) The function may be essential because
> of the limited number of employees available
> among whom the performance of that job
> function can be distributed; and/or
>
> (iii) The function may be highly specialized
> so that the incumbent in the position is
> hired for his or her expertise or ability to
> perform the particular function.

*Id.* § 1630.2(n)(2).

Evidence of whether a particular function is essential includes:

> (i) The employer's judgment as to which
> functions are essential;
>
> (ii) Written job descriptions prepared
> before advertising or interviewing
> applicants for the job;
>
> (iii) The amount of time spent on the job
> performing the function;
>
> (iv) The consequences of not requiring the
> incumbent to perform the function;
>
> (v) The terms of a collective bargaining
> agreement;
>
> (vi) The work experience of past incumbents
> in the job; and/or
>
> (vii) The current work experience of
> incumbents in similar jobs.

*Id.* § 1630.2(n)(3).  However, "an employer may not turn every condition of employment which it elects to adopt into a job function, let alone an essential job function, merely by

15

including it in a job description." *Cripe v. City of San Jose*, 261 F.3d 877, 887 (9th Cir. 2001) (quoting *Echazabal v. Chevron USA, Inc.*, 226 F.3d 1063, 1071 (9th Cir. 2000)).

The parties dispute whether Vicari was a qualified individual with respect to the detailer position and the lot attendant position. There are factual disputes as to whether Cutter Mazda had a detailer position available and whether Vicari was capable of performing the essential functions of a detailer. The court is also unable to determine on the present record whether Vicari was capable of performing the essential functions of a lot attendant.

### 1. Detailer Position.

### a. Availability of Position.

Defendants argue that the court should grant summary judgment in their favor because no detailer position was available at the time of Vicari's interview. ECF No. 91-1, PageID #s 931-33. They point to Tsurumaki's deposition, in which he recalled explaining to Vicari and Patricia that Cutter Mazda did not have any detailer opening. ECF No. 94-5, PageID #s 1226-27.

A plaintiff alleging disparate treatment in hiring "must prove by a preponderance of the evidence that she *applied for an available position* for which she was qualified, but was rejected under circumstances which give rise to an inference of

16

unlawful discrimination." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981) (emphasis added); *see also Sisson v. Helms*, 751 F.2d 991, 995 (9th Cir. 1985) (affirming dismissal of a handicap discrimination claim because "[t]he district court's finding that [the plaintiff] failed to prove that there were jobs available at the Airways Facilities Division is supported by the evidence and was not clearly erroneous"). A job is available if it is "a job for which the employer is seeking applicants." *McLean v. Phillips-Ramsey, Inc.*, 624 F.2d 70, 71 (9th Cir. 1980) (per curiam); *see also Burdine*, 450 U.S. at 253 n.6.

Defendants' argument is unpersuasive for two reasons. First, it is not clear whether a detailer position was available when Vicari was interviewed. Tsurumaki contends that no detailer position was available. While that might explain why Tsurumaki allegedly discussed the alternative of a lot attendant position, Vicari says that he was never told about a lot attendant position. ECF No. 131-13, PageID # 2094. Patricia recalls that Tsurumaki asked Vicari during the interview whether he was "here for the detailing" and whether he "like[d] working with cars, cleaning cars and all that." ECF No. 131-8, PageID # 2030. Edwards stated that applications for nonopen positions would be sent to HR and that it was "rare" to do interviews for nonopen positions because it "would have been a waste of my time

17

and the applicant's time." ECF No. 131-10, PageID # 2054. In short, there are differing accounts about whether Vicari was indeed interviewed for a detailer position.

Second, for a job to be considered available, it need not necessarily be available on the day of the interview. *See McLean*, 624 F.2d at 72 ("A vacancy need not exist on the day an applicant applies for a job."). Cutter Mazda's application form states, "[T]his application for employment is valid for a three-month period after submission." ECF No. 94-3. Vicari was interviewed on June 24, 2015, and Tsurumaki told Vicari that his application would be kept on file. *See* ECF No. 94-6, PageID # 1251.

Defendants concede that Cutter Mazda had at least one detailer position available roughly three weeks later on July 14, 2015. *Id.* at 1252. Defendants did not inform Vicari that a detailer position was available during this time. *Id.* at 1253. Cutter Mazda hired two individuals without hearing disabilities for detailer positions on August 3, 2015. *Id.* at 1252. This evidence cuts against a finding that the detailer position was unavailable. In *McLean v. Phillips-Ramsey, Inc.*, the Ninth Circuit concluded that "an employment opportunity did arise during the time [the plaintiff's] application was on file with the agency" because "[a]bout a month after the interview, the agency did hire a nonblack production artist." 624 F.2d at 72;

*accord EEOC v. Farmer Bros. Co.*, 31 F.3d 891, 900 (9th Cir. 1994) (rejecting the defendant's argument that a machine operator position was unavailable when the plaintiff applied because "[t]he district court found that there were several machine operator openings filled during the 6-month period in which [the plaintiff's] application was active"); *Lowe v. City of Monrovia*, 775 F.2d 998, 1006 (9th Cir. 1985) (concluding that a position was available when "there was an opening after the time [the plaintiff] completed the application process" that was subsequently filled).

At the hearing on July 8, 2019, Defendants argued that *McLean* is distinguishable from this case because the plaintiff in *McLean* sent a follow-up letter to the employer-agency after his interview, and Vicari did not send a letter to Cutter Mazda. The Ninth Circuit in *McLean* stated, "McLean's application for employment, submitted to the agency in early 1972, should have been treated as viable for a reasonable period of time, *especially in light of the follow-up letter he mailed to the agency soon after his interview*." 624 F.2d at 72 (emphasis added). While the follow-up letter supported the Ninth Circuit's conclusion that an employment opportunity existed, the Ninth Circuit did not indicate that the letter was dispositive.

Defendants also urge this court not to rely on *McLean* in light of *Gay v. Waiters' and Dairy Lunchmen's Union, Local*

*No. 30*, 694 F.2d 531 (9th Cir. 1982).  ECF No. 137, PageID # 2444.  In *Gay*, the Ninth Circuit explained that *McLean* created a "very narrow and specific exception" if there are "circumstances where, due to the specific facts involved, some flexibility is required in determining whether, as a practical matter, a job opening occurring after an application is made is an open position under *McDonnell Douglas*."  694 F.2d at 548.  When referencing *McDonnell Douglas*, the Ninth Circuit was referring to the second element of a *prima facie* case of disparate treatment: "that [the plaintiff] was qualified for a job for which the employer was seeking applicants."  *Se* 694 F.2d at 538 n.5 (quoting *McDonnell Douglas*, 411 U.S. at 802).[2]

   *Gay* held that black waiters had failed to establish a *prima facie* case of international discrimination because they "failed to establish the date upon which they applied, and . . . failed to establish that any black applicant applied at the time a job was open or, if the *McLean* exception were to apply, that a job vacancy occurred within a reasonable time."  *Id.*  Unlike the waiters in *Gay*, the EEOC has presented evidence that Vicari applied for a detailer position on June 24, 2015, and that a

---

[2] Neither *McLean* nor *Gay* directly addressed a case in which a plaintiff relies on direct or circumstantial evidence to prove disparate treatment.  However, *McLean* and *Gay* are still applicable because whether or not a plaintiff proceeds under the *McDonnell Douglas* burden-shifting doctrine, the plaintiff must establish a *prima facie* case.  *See McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1121-24 (9th Cir. 2004).

detailer position became available within three weeks of his interview. Defendants do not establish that *McLean* is inapposite given the evidence in the record.

The court declines to grant Defendants' motion for summary judgment based on the unavailability of the detailer position.

### b. Essential Job Functions.

The EEOC argues that the evidence indisputably demonstrates that Vicari was capable of performing the essential functions of a detailer. ECF No. 93, PageID #s 1138-40. Based on the detailer job description and Tsurumaki's deposition testimony, the essential job functions of the detailer position included cleaning the cars and driving them around the dealership. ECF No. 94-9, PageID # 1266; ECF No. 94-5, PageID #s 1204-05. The EEOC submitted evidence that Vicari was capable of performing the work for a janitor/custodian position at Network Enterprises, Inc., and that that position required him to clean buildings and drive company vehicles to work sites.[3]

---

[3] Defendants argue that the job description of the janitor/custodian position is inadmissible hearsay. ECF No. 132, PageID # 2198. However, the job description was authenticated as a business record in the accompanying declaration by Sharon Domingo of Network Enterprises, Inc. *See* ECF No. 94-11, PageID # 1274 ("This job description was kept, and continues to be kept, in the regular course of business. This job description was made, in the regular course of business, at or near the time it was created by a person with knowledge of these matters."). The court may therefore consider the job description. *See* Fed. R. Evid. 803(6).

ECF No. 94-8, PageID # 1258; ECF No. 94-11, PageID # 1275.
Further, Tsurumaki knew that Vicari had a driver's license and
could drive.  ECF No. 94-5, PageID # 1225.

Defendants argue that Vicari was not qualified for the
detailer position because there is no evidence that Vicari could
drive a car with manual transmission.  ECF No. 132, PageID
# 2189.  The detailer job description states that detailers
"must be able to operate various cars and light trucks with both
an automatic and manual transmission."  ECF No. 94-9.

It is unclear whether Cutter Mazda required
its detailers to be able to drive a manual car at the time of
application, given evidence that Cutter Mazda provided training
on how to drive a manual car.  Tsurumaki stated that, during his
"typical interview process," he asked whether an applicant could
drive a manual car.  ECF No. 94-5, PageID # 1202.  When asked if
applicants had to be able to do that before being hired,
Tsurumaki responded, "Not necessarily.  We'll teach them also
to, if they don't know."  *Id.*  The EEOC also submitted a
declaration of Anthone Higuchi Reformina, who contends that,
during his interview for a lot attendant position, "Tsurumaki
was made aware that I could not operate a vehicle with a manual
transmission and he expressed that I would be taught how to do
so."  ECF No. 138-8.  Reformina states that he was offered the

position and was taught by other lot attendants how to drive a

manual car.  *See id.*

However, Edwards asserted that Cutter Mazda does not

provide such training:

> Q.   Is it a requirement to know how to
> drive manual transmission?
>
> A.   If you're going to be a lot attendant
> and you're going to be a detailer,
> absolutely.
>
> Q.   So there's no training at all for your
> department that you would provide for
> manual--to drive a manual--
>
> A.   The liability would be crazy.  It would
> be [a] financial and [] physical liability.

ECF No. 133-6, PageID #s 2292-93.

While Vicari does not know how to drive a manual car,

the evidence does not conclusively establish that that skill was

an essential job function for detailers.  A genuine dispute

exists as to whether Vicari was capable of performing all

essential job functions for the detailer position.[4]

---

[4] Defendants additionally argue, "Even if Mr. Vicari could drive
a manual transmission, there is an issue of fact as to whether
he was qualified for the detailer position in light of his then-
recent traffic violations."  ECF No. 132, PageID # 2190 (citing
ECF No. 133-14).  While Edwards stated that speeding tickets or
other traffic violations could jeopardize the chances of being
hired by Cutter Mazda, *see* ECF No. 113-6, PageID # 2282, there
is no evidence demonstrating that having a clean traffic record
was an essential job requirement for a detailer.

## 2.    Lot Attendant Position.

Defendants argue that the EEOC should not be allowed to argue that Vicari qualified for a lot attendant position. Defendants say that the "contention that Defendants discriminated against Mr. Vicari in denying him hire for the service lot attendant position goes beyond the scope of the Complaint."  ECF No. 132, PageID # 2193 (capitalizations omitted).  The EEOC made the alternative argument that Vicari was qualified for the lot attendant position in rebuttal to Defendants' argument that Vicari was interviewed only for the lot attendant position.  Under these circumstances, the court does not grant summary judgment to Defendants on this point.

### a.    Essential Job Functions.

The EEOC argues that Vicari was capable of performing the essential job functions of a lot attendant because those functions, such as cleaning and driving cars, are similar to those required for the detailer position.  ECF No. 93, PageID #s 1140-41.  As discussed above, it is unclear whether Vicari was qualified for the detailer position.  Even if he were, the lot attendant position differs from the detailer position in at least one respect--the frequent use of two-way radios.

There is evidence in the record indicating that the ability to use a two-way radio is an essential job function for lot attendants.  Tsurumaki explained that lot attendants spend a

"[g]ood 80 percent of the day" communicating with each other and other workers at the dealership by two-way radio. ECF No. 133-4, PageID # 2254. Tsurumaki stated that radios are used "constantly" and "if it's not one person it's another calling in and requesting some kind of something to be done by them." *Id.* at 2254-55. Further, the job descriptions for the opener and main shuttle shifts state that use of two-way radios is part of a lot attendant's responsibilities. ECF No. 94-12, PageID #s 1276-77 (stating that responsibilities include "[a]ssist[ing] with customer pickups when called out using the [two-way] radio" and "driv[ing] with care at all times--radio is to be off, absolutely no use of personal cell phones"). Even the closer shift requires lot attendants to "return [two-way] radio[s] onto [the] charging station," suggesting that closers use the radios in some capacity. *Id.* at 1276-78.

Vicari stated that "[a] radio is something I can't talk on and hear." ECF No. 133-15, PageID # 2335 ("I could talk, but they could talk back to me and I'm not going to be able to hear them because I'm deaf."). At the hearing on July 8, 2019, the EEOC noted that a medical professional had determined that Vicari could hear words whispered at 20 feet away. The EEOC referred to a pre-employment physical exam in which a nurse found Vicari capable of performing the duties of a janitor/custodian with Network Enterprises, Inc. ECF No. 94-8,

PageID # 1258. The records from that exam state, "Whisper test at 20 ft: R 5/5 words, L 5/5 words." *Id.* at 1263. The nurse stated that this test "tested his ability to hear and repeat whisper words at a distance of twenty (20) feet." *Id.* at 1257-58. While this evidence indicates that Vicari could hear sounds, it does not establish that Vicari could make out instructions communicated via two-way radio.

Given the differing pieces of evidence in the record relating to whether Vicari was capable of performing all essential functions of the lot attendant position, the EEOC is not entitled to summary judgment with respect to a possible lot attendant position unless the EEOC shows that an alternative to use of the two-way radio was feasible.

### b. Reasonable Accommodations.

The EEOC argues that "small accommodations . . . were already being used by Cutter employees as alternate methods of communicating (use of text rather than the two-way radio, verbal communication and tooting the horn)" and that those accommodations "could have easily allowed Ryan Vicari to communicate regarding the actual essential functions at issue (i.e. when he was needed to either assist with customer pick up or responding with location and arrival time)." ECF No. 93, PageID # 1145.

"Determining whether a proposed accommodation . . . is reasonable, including whether it imposes an undue hardship on the employer, requires a fact-specific, individualized inquiry." *Nunes v. Wal-Mart Stores, Inc.*, 164 F.3d 1243, 1247 (9th Cir. 1999) (citation omitted). "Undue hardship" means "significant difficulty or expense incurred by a covered entity" when considered in light of the following factors:

> (i) The nature and net cost of the accommodation needed under this part, taking into consideration the availability of tax credits and deductions, and/or outside funding;
>
> (ii) The overall financial resources of the facility or facilities involved in the provision of the reasonable accommodation, the number of persons employed at such facility, and the effect on expenses and resources;
>
> (iii) The overall financial resources of the covered entity, the overall size of the business of the covered entity with respect to the number of its employees, and the number, type and location of its facilities;
>
> (iv) The type of operation or operations of the covered entity, including the composition, structure and functions of the workforce of such entity, and the geographic separateness and administrative or fiscal relationship of the facility or facilities in question to the covered entity; and
>
> (v) The impact of the accommodation upon the operation of the facility, including the impact on the ability of other employees to perform their duties and the impact on the facility's ability to conduct business.

29 C.F.R. § 1630.2(p).  In the summary judgment context, "courts should weigh the risks and alternatives, including possible hardships on the employer, to determine whether a genuine issue of material fact exists as to the reasonableness of the accommodation."  *Nunes*, 164 F.3d at 1247 (citations omitted).

Defendants argue that the EEOC may not raise the issue of reasonable accommodation because the EEOC "affirmatively stated that it is not pursuing a reasonable accommodation claim."  ECF No. 132, PageID # 2194.  Indeed, in its opposition to Defendants' earlier motion to stay, the EEOC said that "the EEOC's Complaint does not contain an allegation regarding the denial of a reasonable accommodation."  ECF No. 20, PageID # 118.  But Defendants misread the EEOC's position as exhibiting an "ever changing theory of the case."  *See* ECF No. 132, PageID # 2194.  The EEOC is not now raising a claim based on the denial of a reasonable accommodation.  The EEOC is instead attempting to demonstrate that Vicari is a "qualified individual," meaning "an individual who, *with or without reasonable accommodation*, can perform the essential functions" of the job in question.  42 U.S.C. § 12111(8) (emphasis added).  The issue of whether a reasonable accommodation would have allowed Vicari to perform the essential functions of a lot attendant is properly before this court precisely because, as part of establishing a *prima*

*facie* case of discrimination, the EEOC has the burden of proving that Vicari is qualified.

Defendants further argue that texting is not a viable alternative to using a two-way radio. ECF No. 132, PageID # 2199. Edwards explained that lot attendants often listen on two-way radios for the cashier's instructions regarding the customers' car needs, and the cashier "is going to call up two, three, four, five cars at [a] time as the customer is at [the] window." ECF No. 133-6, PageID # 2297. Edwards also explained that texting may cause customers to think poorly of Cutter Mazda employees:

> Q.   But that's never been tried, the texting?
>
> A.   Well, because they frown on using your phone during work.  You weren't supposed to be using your cell phone for personal, you know, or anything you're supposed to be using your phone on.  How would they know if you're making a personal text or a work text, you know?
>
> Q.   But the work text would be from the [sic]?
>
> A.   It's all about perceptions and what customers see.  Customers see you standing there on your phone, they think you're playing on your phone.  But . . . you know, if they can hear the cashier saying I need tag 4646, blue Mustang, customer knows that that's what that lot attendant's doing, and what he's--what his job is doing in bringing up that car.

*Id.* at 2300.

Defendants also emphasize that the EEOC's own investigation produced evidence that texting would not be a reasonable accommodation. ECF No. 132, PageID # 2201. Defendants point to a summary of the EEOC's phone interview with Wally Soares, owner of Island Skill Gathering, a company that provides disabled persons with assistive technology. ECF No. 133-18. That summary provides:

> I then asked Mr. Soares about texting technology that currently exists. He stated that there is no such technological attachment that would enable a push-to-talk walkie-talkie to convert talk to text and vice versa that would facilitate to communication effectively for a hearing impaired individual. The only option Mr. Soares recommended would be to replace the push-to-talk walkie-talkies with a smart phone (or something similar) that allows texting. Mr. Soares further explained that texting is the preferred method of communication in the "deaf community," but he also recognized that it would place an undue hardship on an employer to be forced to replace an established viable communication system with smart phones to accommodate one employee.

*Id.* It is not clear to this court that the summary is in admissible form; it appears to be hearsay. The court does not, however, deem that dispositive. The court recognizes Soares himself might testify at trial such that any hearsay issue could be eliminated. But the court questions whether Soares has a basis for opining on what might constitute an undue hardship for

an employer.  Certainly the record includes no evidence that he does.

Given the state of the evidence, the EEOC is not entitled to summary judgment on whether Vicari was qualified for a lot attendant position.  But the denial of summary judgment to the EEOC on that issue does not translate into a grant of summary judgment to Defendants on the same issue.  In the first place, Defendants have not sought summary judgment on that ground.  In the second place, the record does not include admissible evidence showing the undue hardship that Soares hypothesized would attend any conversion from two-way radios to smart phones.  Edwards also expressed concern that texting would be misconstrued by customers as personal use of smart phones, but the basis of this concern is not in the record.  Because customers could see Vicari react to texts in a work-related manner, it is not at all clear that Edwards's concern is fact-based, or that it could not be addressed by posting signs saying that employees are permitted to use cell phones only for work-related purposes.  And there is no evidence as to how much longer texts might take than speaking, especially as shorthand conventions could be adopted.  In short, factual issues preclude summary judgment to Defendants on the "qualified individual" element.

### C. Third Element: Adverse Employment Action.

### 1. Direct Evidence of Discrimination.

The EEOC argues that there is direct evidence that Vicari was denied a position at Cutter Mazda because of his actual and perceived deafness.  ECF No. 93, PageID #s 1146-49.

The ADA "outlaws adverse employment decisions motivated, even in part, by animus based on a plaintiff's disability or request for an accommodation--a motivating factor standard." *Head v. Glacier Nw. Inc.*, 413 F.3d 1053, 1065 (9th Cir. 2005), *abrogated on other grounds by Univ. Of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338 (2013).  An individual is perceived as disabled if he or she is "regarded as having such an impairment," meaning that "he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity."  42 U.S.C. § 12102(3).

"Direct evidence is evidence 'which, if believed, proves the fact of discriminatory animus without inference or presumption.'"  *Coghlan v. Am. Seafoods Co. LLC*, 413 F.3d 1090, 1095 (9th Cir. 2005) (quoting *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1221 (9th Cir. 1998)).  Direct evidence "typically consists of clearly sexist, racist, or similarly discriminatory statements or actions by the employer."  *Id.*

EEOC has presented undisputed evidence that Tsurumaki decided not to hire Vicari at least in part because of his actual or perceived hearing disability. Tsurumaki admits that he told Patricia and Vicari that Vicari's deafness presented safety concerns and that Vicari should consider a position in a different industry. ECF No. 94-5, PageID #s 1231-33. Tsurumaki confirmed that, had Vicari been able to hear, he would have determined whether Vicari was qualified for the lot attendant position. *Id.* at 1233-34. Tsurumaki normally reviews the job description with an applicant and determines whether the applicant can perform the duties in the description, but Tsurumaki did not do that with Vicari. *See id.* at 1202. Nor did Tsurumaki have Vicari drive around the lot or try to use a two-way radio. *Id.* at 1236-37.

Some direct evidence that Vicari was discriminated against on the basis of his hearing disability has been offered. *See EEOC v. Heartland Auto. Serv., Inc.*, No. 12-2054-STA-dkv, 2013 WL 6065928, at *2 (W.D. Tenn. Nov. 18, 2013) (concluding that direct evidence of disability discrimination existed when the defendant "refused to hire [the plaintiff] based only on the information that he was deaf" and "did not make an individualized assessment of [the plaintiff's] capabilities or determine if reasonable accommodations were available before denying employment to [the plaintiff]"). However, given the

factual disputes going to the other elements of the EEOC's ADA claim, the court does not grant summary judgment to either party.

## 2. Supervisor Liability.

Defendants argue that they should be granted summary judgment because, under *Vance v. Ball State University*, 570 U.S. 421 (2013), Tsurumaki is not a "supervisor" for the purpose of imputing liability to Defendants. ECF No. 91-1, PageID # 934. They argue that Tsurumaki, as Assistant Service Manager, did not have final authority to make hiring decisions and that he needed sign-off from the Service Manager. *See id.* at 935-36.

In *Vance*, the Supreme Court decided the question of "who qualifies as a 'supervisor' in a case in which an employee asserts a Title VII claim for workplace harassment," holding:

> [A]n employer may be vicariously liable for
> an employee's unlawful harassment only when
> the employer has empowered that employee to
> take tangible employment actions against the
> victim, i.e., to effect a "significant
> change in employment status, such as hiring,
> firing, failing to promote, reassignment
> with significantly different
> responsibilities, or a decision causing a
> significant change in benefits."

570 U.S. at 423, 431 (quoting *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)). "[W]here the decision-making power is confined to a small number of individuals, if those individuals rely on the recommendations of other workers who actually interact with the affected employee, 'the employer

34

may be held to have effectively delegated the power to take tangible employment actions to the employees on whose recommendations it relies.'" *Beecham v. Wyndham Vacation Resorts, Inc.*, Civ. No. 11-00129 ACK-BMK, 2013 WL 6730755, at *9 (D. Haw. Dec. 18, 2013) (quoting *Vance*, 570 U.S. at 447). "[T]angible employment actions can be subject to [approval by higher management]." *Vance*, 570 U.S. at 437 n.8 (citing *Ellerth*, 524 U.S. at 762). This standard for supervisor liability also applies to disparate treatment claims.[5] *See Beecham*, 2013 WL 6730755, at *9 (applying *Vance* to a disparate treatment claim under the Age Discrimination in Employment Act).

Defendants fail to demonstrate that they cannot be vicariously liable for Tsurumaki's conduct during his interview of Vicari. While Tsurumaki may not have had final authority in all hiring decisions, he conducted initial interviews of applicants and made recommendations to the Service Manager, who rarely departed from his recommendations. ECF No. 94-5, PageID #s 1198-1201. Edwards stated that, while normally a Service

---

[5] The EEOC argues that *Vance* only applies to harassment claims, not discrimination claims. ECF No. 130, PageID # 1889. The EEOC contends that "in discrimination cases, it is axiomatic that adverse actions such as refusal to hire occur within the scope of employment," and that courts look to agency principles to determine the scope of employment. *See id.* The only case the EEOC cites in support of this contention is *Clamor v. United States*, 240 F.3d 1215 (9th Cir. 2001). *Clamor* "review[ed] the scope of employment determination under the [Federal Tort Claims Act]." 240 F.3d at 1217. It did not hold that *Vance* is inapplicable to discrimination claims.

Manager signed off on applications, Tsurumaki could do so when Edwards was unavailable.  ECF No. 131-10, PageID #s 2057-58.  The evidence therefore suggests that Tsurumaki was involved in and exerted influence over the hiring process at Cutter Mazda.  *See Bergene v. Salt River Project Agr. Imp. & Power Dist.*, 272 F.3d 1136, 1141 (9th Cir. 2001) ("Even if a manager was not the ultimate decisionmaker, that manager's retaliatory motive may be imputed to the company if the manager was involved in the hiring decision."); *Lakeside-Scott v. Multnomah Cty.*, 556 F.3d 797, 806 (9th Cir. 2009) (noting that the Ninth Circuit "has affirmed liability of subordinates who wielded a [] significant degree of influence over the final decision maker's adverse employment decision").

Defendants are not entitled to summary judgment on the ground that Tsurumaki was not a supervisor.  As a result, the court need not address Defendants' argument that "[i]n the absence of supervisor liability, the EEOC cannot establish that Defendants were negligent."  ECF No. 91-1, PageID # 936 (capitalization omitted).

### D.  Defenses.

#### 1.  Direct Threat to Health and Safety.

The EEOC argues that summary judgment should be granted against Defendants on their affirmative defense that

Vicari "posed a direct threat to the health and safety of others and/or himself." ECF No. 28, PageID # 237.

An employer may refuse to hire a disabled individual who poses "a direct threat to the health or safety of other individuals in the workplace." 42 U.S.C. § 12113(b); *see also* 42 U.S.C. § 12111(3). A direct threat means "a significant risk of substantial harm to the health or safety of the individual or others that cannot be eliminated or reduced by reasonable accommodation." 29 C.F.R. § 1630.2(r).

In their opposition to the EEOC's motion for summary judgment, Defendants stated that they "do not intend to rely on their 17th affirmative defense of direct threat and withdraw that defense." ECF No. 132, PageID # 2191. The court therefore grants summary judgment to the EEOC with respect to this defense.

In light of Defendants' withdrawal of the threat defense, the EEOC makes additional requests of the court:

> As Defendants have withdrawn their direct threat defense, the EEOC requests that the Court bar Defendants from presenting testimony or evidence that they denied Ryan Vicari hire due to safety concerns as permitting such without requiring Defendants to meet the burden of proving direct threat would thwart the purpose of this defense and Congressional intent to disallow reliance on subjective assumptions regarding disabilities. Finally, this Court should make an adverse finding (and issue a jury instruction) on the issue of pretext against Defendants for proving shifting

> justifications as to Ryan Vicari's denial of
> hire.

ECF No. 138, PageID #s 2475-76.  These arguments are raised for

the first time in the EEOC's reply, but they could not have been

made before Defendants filed their opposition.  Nevertheless,

these matters are more suitable for motions in limine or

proposed jury instructions, not as part of the EEOC's reply

memorandum in support of a motion for summary judgment.

## 2. Inability to Reasonably Accommodate Disability.

The EEOC argues that summary judgment should be

granted against Defendants on their affirmative defense that

"[t]he EEOC's claims are barred because Defendants were unable

to reasonably accommodate Charging Party's alleged disability

without undue hardship."  ECF No. 28, PageID # 236.  Citing

*Nunes*, the EEOC argues that this defense fails because

"Defendants failed to conduct a fact-specific, individualized

inquiry to determine whether any reasonable accommodation is

appropriate and would impose an undue hardship."  ECF No. 93,

PageID # 1151.

The EEOC mispresents *Nunes*.  *Nunes* describes how a

court determines whether a proposed accommodation is reasonable;

it does not impose a burden on an employer to conduct "a fact-

specific, individualized inquiry."  *See* 164 F.3d at 1247.  The

court does not grant summary judgment to the EEOC on this

defense.  Nor can Defendants prevail on this defense at this point, even if they sought to.  The record clearly raises factual issues on this point.

### 3. Statute of Limitations.

The EEOC argues that summary judgment should be granted against Defendants on their affirmative defense that "[t]he EEOC's claims are barred by the applicable statute of limitations."  ECF No. 28, PageID # 234.

The ADA incorporates Title VII's enforcement provisions.  *See* 42 U.S.C. § 12117(a).  "Title VII contains several distinct filing requirements which a claimant must comply with in bringing a civil action." *Valenzuela v. Kraft, Inc.*, 801 F.2d 1170, 1172, *as amended by* 815 F.2d 570 (9th Cir. 1987).  To file a claim under Title VII, a plaintiff must file a charge with the EEOC within 180 days of the last discriminatory act, or within 300 days "if the aggrieved person has instituted proceedings with a state or local agency with authority to grant or seek relief from such practices." *See Bouman v. Block*, 940 F.2d 1211, 1219 (9th Cir. 1991) (citing 42 U.S.C. § 2000e5(e)).

The Ninth Circuit recently expressed "doubt that the EEOC is subject to the same strict timing requirements with respect to exhaustion of remedies in Title VII as a private party before bringing a class suit." *Arizona ex rel. Horne v. Geo Grp., Inc.*, 816 F.3d 1189, 1208 n.8 (9th Cir. 2016), *cert.*

*denied sub nom. Geo Grp., Inc. v. EEOC*, 137 S. Ct. 623 (2017).
This is not a class suit, but even if the timing requirements
did apply to this case, Vicari filed his charge of
discrimination on August 4, 2015, within 300 days of his
interview on June 24, 2015. *See* ECF No. 92-7; *see also* 94-6,
PageID # 1245.

The court grants summary judgment to the EEOC on this
defense.

### 4.    Failure to Exhaust Remedies.

The EEOC argues that summary judgment should be
granted against Defendants with respect to their affirmative
defense that "[t]he EEOC's claims are barred due to the EEOC's
and/or Charging Party's failure to exhaust administrative and/or
other remedies."  ECF No. 28, PageID # 234.

Prior to bringing a suit, the EEOC must satisfy
certain conditions precedent: "(1) the EEOC must receive a
charge of an unlawful employment practice; (2) the EEOC must
notify the employer of the alleged wrongful act and conduct an
investigation to determine whether there is reasonable cause to
believe the charge is true; (3) the EEOC must engage in
'informal methods of conference, conciliation, and persuasion'
to eliminate the alleged unlawful practices; and (4) if the
conciliation efforts are unsuccessful, the EEOC must notify the
employer in writing." *EEOC v. NCL Am., Inc.*, 536 F. Supp. 2d

1216 (D. Haw. 2008) (citing *EEOC v. Pierce Packing Co.*, 669 F.2d
605, 607 (9th Cir. 1982) (quoting 42 U.S.C. § 2000e-5)).

The EEOC has satisfied these steps. Vicari submitted
his Charge against Cutter Mazda on August 4, 2015, and
Defendants received the EEOC's Determination Letter on May 26,
2017. ECF No. 92-7; ECF No. 94-6, PageID # 1248. This court
has previously declined to rule that the EEOC failed to satisfy
its conciliation obligations. ECF No. 26. Defendants have not
shown that a different ruling is now warranted. The court
grants summary judgment to the EEOC on this defense.

### E. Defendants' Request to Stay.

As alternate relief, Defendants request that the court
stay the case given the EEOC's alleged failure to conciliate.
ECF No. 91-1, PageID # 939. Defendants argue that "[a]t no
point during the investigation or the purported conciliation
process did the EEOC inform Defendants that the basis for the
charges against them was that Mr. Vicari's hearing impairment
was aided by cochlear implants." *Id.* at 940. They argue that
the Determination Letter was "impermissibly vague" and failed to
provide Defendants with sufficient notice of the factual
allegations underlying the charges against them. *See id.* at
941-47.

Before filing a suit against an employer, the EEOC is
required to "endeavor to eliminate any . . . alleged unlawful

employment practice by informal methods of conference, conciliation, and persuasion." 42 U.S.C. § 2000e-5(b). Title VII empowers a court, in the event of nonconciliation, to "stay further proceedings for not more than sixty days pending . . . further efforts of the Commission to obtain voluntary compliance." 42 U.S.C. § 2000e-5(f)(1).

"The proponent of a stay bears the burden of establishing its need." *Clinton v. Jones*, 520 U.S. 681, 708 (1997) (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936)). In *Mach Mining, LLC v. EEOC*, the Supreme Court discussed how a court should assess a factual dispute concerning conciliation:

> If . . . the employer provides credible evidence of its own . . . indicating that the EEOC did not provide the requisite information about the charge or attempt to engage in a discussion about conciliating the claim, a court must conduct the factfinding necessary to decide that limited dispute. Should the court find in favor of the employer, the appropriate remedy is to order the EEOC to undertake the mandated efforts to obtain voluntary compliance. *See* § 2000e-5(f)(1) (authorizing a stay of a Title VII action for that purpose).

135 S. Ct. 1645, 1656 (2015).

The issue of whether the EEOC conciliated is subject to "narrow" judicial review. *Id.; see also id.* at 1652 (noting that "the statute provides the EEOC with wide latitude over the conciliation process"). To satisfy its conciliation obligation, the EEOC "must tell the employer about the claim--essentially,

what practice has harmed which person or class—and must provide the employer with an opportunity to discuss the matter in an effort to achieve voluntary compliance." *Id.* at 1652. In other words, "the EEOC [must] afford the employer a chance to discuss and rectify a specified discriminatory practice." *Id.* at 1653.

As the EEOC points out, Defendants previously filed a motion to stay for failure to conciliate, which this court denied. *See* ECF No. 130, PageID # 1982. In its order filed on January 24, 2018, the court identified no insufficiency in the EEOC's conciliation efforts. ECF No. 26, PageID # 196. The court explained that "Defendants' desire for a more detailed 'factual basis' underlying the EEOC's reasonable cause determination does not alter the analysis":

> *Mach Mining* expressly held that the EEOC has no obligation to "lay out 'the factual and legal basis for' all its positions." 135 S. Ct. at 1653-54 (citation omitted). Such a requirement, the Supreme Court explained, "conflict[s] with the latitude Title VII gives the Commission" insofar as "Congress left to the EEOC such strategic decisions as whether to lay all its cards on the table." *Id.* at 1654. The EEOC did not have to tell Defendants *why* the investigation culminated in the reasonable cause determination; it only had to—and did—describe what it thought "the employer ha[d] done" and who "ha[d] suffered as a result." *See id.* at 1656.

ECF No. 26, PageID # 197.

Vicari's cochlear implant is a fact supporting EEOC's claims; it is not a new claim or charge. The EEOC was not

43

required to provide Defendants with a list of all its factual allegations during the conciliation process, and Defendants do not explain how the allegation regarding Vicari's cochlear implant would have affected conciliation.[6]

Defendants insist that the court's earlier order is inapplicable because "Defendants are challenging the sufficiency of the EEOC's notice regarding the new charges in the [Determination Letter] for failure to provide reasonable accommodation and discrimination based on perceived disability." ECF No. 91-1, PageID # 948. The court understands that Defendants' earlier motion argued that the EEOC had failed to engage in conciliation, while their current motion argues that Defendants did not receive notice of the cochlear implant during the conciliation process. However, the EEOC was permitted to assert reasonable accommodation[7] and perceived disability claims in the Determination Letter because those claims would be "like and reasonably related to" the Charge that alleged discriminatory failure to hire. *See Geo Grp.*, 816 F.3d at 1205

---

[6] At the hearing on July 8, 2019, Defendants' counsel stated that, had Defendants known about Vicari's cochlear implant, they could have taken further steps and determined whether Vicari was qualified to be a lot attendant or detailer. It is unclear to the court what these steps would have been and why the cochlear implant would have prompted them. There is nothing in the record suggesting how Vicari's cochlear implant might have affected his job qualifications.

[7] As explained above, the EEOC's Complaint does not actually include a claim for the denial of a reasonable accommodation.

("EEOC could assert an employee's discriminatory layoff claim as it was 'like and reasonably related to' [the employee's] charge which alleged discriminatory failure to recall and rehire." (quoting *Farmer Bros.*, 31 F.3d at 899)).

Defendants argue that *EEOC v. Amsted Rail Co., Inc.*, 169 F. Supp. 3d 877 (S.D. Ill. 2016), and *EEOC v. PC Iron, Inc.*, 316 F. Supp. 3d 1221 (S.D. Cal. 2018), support its position that a stay should be granted. ECF No. 91-1, PageID #s 945–46. Defendants' reliance on these cases is unavailing.

In *Amsted Rail*, the defendant argued that the EEOC had not satisfied the conciliation requirements because it had failed to inform the defendant of the specific allegations against it. *See* 169 F. Supp. 3d at 884. The court was "given pause" because neither the charge nor the determination letter explained what disability served as the basis for the defendant's alleged discriminatory conduct. *See id.* at 885. The court nonetheless concluded that the EEOC had provided adequate notification given the "other statements from the EEOC" to the defendant. *See id.* Unlike the documents in *Amsted Rail*, Vicari's Charge identified his disability and included the allegation that Defendants discriminated against him "because I am deaf." ECF No. 92-7. Defendants have not cited any law requiring the EEOC to list all factual allegations related to

Vicari's hearing disability to satisfy the conciliation requirements under *Mach Mining*.

In *PC Iron*, the defendant raised an affirmative defense that the EEOC's claims were barred for failure to conciliate a hostile work environment claim.  According to the court, the determination letter included a "vague and conclusory statement" that "there was 'evidence that [the plaintiff] was subjected to a hostile work environment,'" and the plaintiff's charge did not "allege a hostile work environment or make any allegations other than that she was terminated because of her sex and pregnancy."  316 F. Supp. 3d at 1232.  Nonetheless, the court concluded that "because [the defendant] was already aware of [the plaintiff's] allegations based on the charge of discrimination, and based on evidence that [the defendant] in fact made an offer to resolve the matter in response . . . , the EEOC's efforts to conciliate the discrimination charge survives the 'relatively barebones review' required of the Court."  *Id.* (quoting *Mach Mining*, 135 S. Ct. at 1656).  This conclusion in *PC Iron*, reached despite the court's misgivings about the determination letter and charge, emphasizes the narrow scope of judicial review of the EEOC's conciliation efforts.  Moreover, the defendant in *PC Iron* was unaware of any allegations relating to a hostile work environment.  Here, by contrast, any reasonable accommodation claim or perceived disability claim

would arise out of the same allegations as the "actual disability" claim--i.e., that Tsurumaki decided not to hire Vicari given his hearing disability.

Defendants' request for a stay is denied.

## V.    CONCLUSION.

The EEOC's motion for summary judgment is granted with respect to Defendants' defenses that Vicari posed a direct threat to the health and safety of himself and others, that the EEOC's claims are barred by the applicable statute of limitations, and that the EEOC failed to exhaust administrative remedies prior to filing suit. The remainder of the EEOC's summary judgment motion is denied. Defendants' motion for summary judgment is denied.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, July 11, 2019.



/s/ Susan Oki Mollway

Susan Oki Mollway
United States District Judge

U.S. Equal Employment Opportunity Commission v. MJC, Inc. et al., Civ. No. 17-00371 SOM-WRP; ORDER (1) GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND (2) DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT.